*United States v. Matera*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2006

(Argued: November 8, 2006       Decided: May 30, 2007)

Docket Nos.  05-0392-cr(L), 05-4259-cr(con), 05-4289-cr(con)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

        *Appellee*,

   -v.-

JOHN MATERA, THOMAS CARBONARO,
and PETER GOTTI,

       *Defendant-Appellants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: FEINBERG, LEVAL, and CABRANES, *Circuit Judges*.

  Defendants appeal from judgments of conviction entered in the United States District Court for the Southern District of New York (Richard C. Casey, *Judge*).  Affirmed.

        JOHN A. CIRANDO, D.J. & J.A. Cirando, Esqs. (Rebecca A. Crance, *on the brief*), Syracuse, NY, for *Defendant-Appellant John Matera*.

        THOMAS H. NOOTER, Freeman Nooter & Ginsberg, Esqs., New York, NY, for *Defendant-Appellant Thomas Carbonaro*.

        JOSEPH A. BONDY, Law Offices of Joseph A.

Bondy, New York, NY, for *Defendant-Appellant Peter Gotti*.

ELIE HONIG, Assistant United States Attorney for the Southern District of New York (Victor L. Hou, Karl Metzner, Assistant United States Attorneys, *of counsel*; Michael J. Garcia, United States Attorney, *on the brief*), New York, NY, for *Appellee*.

LEVAL, *Circuit Judge*:

Defendants John Matera, Thomas Carbonaro, and Peter Gotti appeal from judgments of conviction entered against them in the United States District Court for the Southern District of New York (Richard C. Casey, *Judge*), convicting them of participation in an enterprise constituting a Racketeer Influenced and Corrupt Organization ("RICO") – the Gambino Organized Crime Family. Carbonaro and Gotti were found guilty after jury trial of racketeering and racketeering conspiracy, in violation of 18 U.S.C. § 1962(c) and (d), and construction industry extortion, in violation of 18 U.S.C. § 1951, as well as conspiracies under 18 U.S.C. § 1959(a)(5), in the case of Gotti, to murder Salvatore Gravano, and in the case of Carbonaro, to murder Frank Hydell. Matera was convicted on his plea of guilty to an Information charging him with racketeering conspiracy in violation of 18 U.S.C. § 1962(d), including as predicate acts conspiring to murder Frank Hydell and operating an illegal gambling business. Gotti was sentenced primarily to 25 years imprisonment, Carbonaro to 70 years, and Matera 20 years.

Defendants raise numerous arguments on appeal, including challenges to the receipt in evidence of uncharged crimes, expert testimony, and recordings of jailhouse conversations; challenges to the constitutionality and reasonableness of their sentences; and challenges relating to the venue of the prosecutions and to the effective assistance of counsel. We find no merit in

their claims and affirm the judgments of conviction.

**Background**

The Government's evidence included extensive proof of the nature and structure of the Gambino Organized Crime Family, which had been headed by defendant Peter Gotti's brother, John Gotti Sr., until the latter was convicted and imprisoned in part through the testimony of the former Family Underboss Salvatore Gravano, who cooperated with the Government. At the trial of the appellants, members of the Gambino Family cooperated with the Government and testified to the blood oath taken by all members to kill any member who violated the oath of loyalty. They testified that after the conviction of John Gotti, the operations of the family were taken over by a Ruling Panel, which included the defendant Peter Gotti, who assumed the rank of Acting Boss. Thomas Carbonaro was a soldier in the Family. The evidence, seen in the light most favorable to the Government, *see Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979), showed the following.

**I.     The Conspiracy to Murder Salvatore Gravano**

When Peter Gotti visited John Gotti in prison in September 1996, John ranted against the treachery of Gravano and urged Peter to kill Gravano, saying, "that's a bill that's gotta be paid." Peter Gotti, then Acting Boss, charged Family members Carbonara and Eddie Garafola to kill Gravano. Gravano, in the meantime, had moved to Arizona, where he had assumed a new identity through the federal Witness Security Program. His location, however, had been disclosed by a newspaper article. The evidence showed elaborate preparations made by Carbonara and others to kill Gravano, including numerous trips to Arizona, assumption of disguises, scouting of the locations where Gravano was likely to be found, and extensive

planning of the manner in which the killing would be carried out. The plan was foiled because Gravano was arrested for drug dealing in February 2000. According to Carbonaro, Peter Gotti, who had financed the trip, complained that the plan to kill Gravano had cost too much money and wanted the equipment they had purchased, including a handgun.

**II.    The Conspiracy to Murder Frank Hydell**

In early 1998, there were rumors in the Family that Frank Hydell was cooperating with the Government and providing information about Matera and about Carbonaro's nephews. Carbonaro told Michael DiLeonardo, who was a Captain in the Family, that Hydell was "a rat" and had to be killed. On April 27, 1998, Matera lured Hydell to a nightclub on Staten Island. In the early morning hours he was shot and killed as he stepped outside the nightclub. In early 2002, several years following Hydell's murder, Michael DiLeonardo heard that there might be an arrest related to the Hydell murder. DiLeonardo warned Carbonaro, who told him that he, Carbonaro, was the driver "on that hit" and that Matera brought Hydell to the strip club to "set him up."

**III.   The Construction Industry Extortion**

The Gambino Family, with Peter Gotti as Acting Boss, used its control of labor unions to extort the construction industry. DiLeonardo estimated that the Gambino Family made "tens of millions" of dollars extorting construction companies. In exchange for money, the construction companies were permitted to hire non-union workers without trouble from unions. If the contractor or union official resisted, either he would be hurt or there would be a strike, or work on a construction job would be stopped. In addition to money, the construction companies also gave the Gambino Family "cushy no show/no work" jobs. Carbonaro's nephew and Peter Gotti's

4

son received such jobs. In a conversation Peter had in 1996 with his brother John in the Marion prison, where John was serving his sentence, Peter told John that Peter's son was a "shop steward" and, although he wished his son could stay in the job forever, the "Government, . . . they got a big thing, a big investigation." Carbonaro participated in the Family's extortion of the industry by accompanying Eddie Garafola, a Gambino Soldier, to collect extortion-related payments from contractors and construction-industry officials.

## Discussion

### I. Evidentiary challenges

#### A. Prior uncharged crimes

Defendant Gotti, joined by Carbonaro, contends that the receipt of evidence of uncharged murders committed by members of the Gambino Family was a prejudicial abuse of discretion. We reject the contention.

Prior to the trial of Peter Gotti and Carbonaro, the Government gave notice of intention to offer evidence of crimes not specifically alleged in the indictment. The Government justified this evidence as proof of the existence of the Gambino Family as a criminal enterprise in which the defendants participated, which was an essential element of the various racketeering charges under the RICO statutes. With the court's approval, over the objections of the defendants, the Government then introduced evidence of various crimes committed by Gambino Family members, including the participation of John Gotti in the murders of Louie Milito, Louie DiBono, and Robert DiBernardo. The court gave protective instructions to the effect that the jury may not conclude that a defendant is guilty of participating in criminal conduct merely from the fact that he was associated with other people who were guilty of wrongdoing.

5

The defendants contend that the receipt of this evidence violated Federal Rules of Evidence 404(b) and 403. Rule 404(b), sometimes described as the "other crimes" rule, provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The district court correctly ruled that this evidence did not violate Rule 404(b). The evidence was not offered to show any character trait of any defendant or that a defendant acted in accordance with such a trait. It was offered to prove an essential element of the RICO crimes charged – the existence of a criminal enterprise in which the defendants participated. The court's conclusion that there was no violation of Rule 404(b) was consistent with numerous prior rulings of this court in which criminal acts of non-defendants, including killings, were received to prove the existence of the criminal RICO enterprise in which the defendant participated. *See United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (uncharged acts admissible to prove the existence of the RICO enterprise alleged in the indictment); *United States v. Thai*, 29 F.3d 785, 812-13 (2d Cir. 1994) (uncharged acts admissible as evidence of "the existence and structure of the [RICO] enterprise").

More pertinent is the defendants' contention that the receipt of this evidence violated Rule 403. Rule 403 bars the receipt of evidence which is unduly prejudicial in that its capacity for unfair prejudice outweighs its probative value. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Under this rule, the mere fact that evidence is relevant to an issue in dispute does not ensure its admissibility, if its

6

capacity for unfair prejudice outweighs its probative value.

The district court did not abuse its discretion in finding that the probative value of the evidence outweighed the potential for unfair prejudice. *See United States v. Taubman*, 297 F.3d 161, 164 (2d Cir. 2002); *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2002); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). When a defendant engages in a criminal enterprise which involves very serious crimes, there is a likelihood that evidence proving the existence of the enterprise through its acts will involve a considerable degree of prejudice. Nonetheless, the evidence may be of important probative value in proving the enterprise. *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (evidence of uncharged acts of extreme violence by members of a RICO enterprise "was certainly probative of the existence of the charged enterprise"). The district court is commanded by Rule 403 to weigh the probative value against the unfair prejudice. *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). We find no abuse of discretion in the court's conclusion that the probative value was not "substantially outweighed by the danger of unfair prejudice."

**B.     Expert testimony**

Gotti alleges that the district court abused its discretion by admitting the expert testimony of Kenneth J. McCabe regarding organized crime in the New York area. McCabe, who had extensive experience investigating organized crime as a New York Police Department Detective and later as an Investigator for the United States Attorney's Office, testified about the composition and structure of New York organized crime families. The court limited McCabe's testimony to "matters of organized crime families generally, not on facts specific to this case . . . [such as] the membership or rank of the defendants." *United States v. Gotti*, No. S8 02 CR 743,

7

2004 WL 2423799, at *2 (S.D.N.Y. Oct. 29, 2004). Immediately after McCabe's testimony, the district court gave a limiting instruction about the role and purposes of expert testimony at trial, stating that it should not "substitute for [the jury's] own reason, judgment and common sense."

Gotti contends this evidence was received in violation of Federal Rule of Evidence 702, which allows expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Gotti also argued that the testimony should have been excluded under Rule 403. He argues it was likely to mislead the jury, because "government experts often receive unfounded credibility when testifying about factual matters." This circuit has approved the admission of expert testimony in organized crime cases "to help explain the operation, structure, membership, and terminology of organized crime families." *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993); *see also United States v. Amuso*, 21 F.3d 1251, 1263-64 (2d Cir. 1994); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988). Considering all pertinent factors, we find no abuse of discretion in the receipt of this evidence.

**C. Marion recordings**

Gotti contends the receipt of recordings of his conversations with his brother John at the Marion Federal Penitentiary ("the Marion recordings") violated the Confrontation Clause, as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004).

In the Marion recordings, John spoke of his hatred for Gravano, who had testified for the Government at John's trial. John spoke of his desire for revenge against Gravano. Also on the Marion recordings, Peter acknowledged knowing several co-conspirators and spoke of his son's involvement with a construction union. The defense could not examine John

8

about the Marion recordings at trial because in the meantime John had died.

In *Crawford*, the Supreme Court held that the Confrontation Clause prohibits the admission of hearsay statements of a testimonial nature unless the declarant is available for cross-examination. We need not address whether John's statements in the Marion recordings were "testimonial," within the meaning of *Crawford*, because there is no Confrontation Clause violation for statements admitted "for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9; *cf. United States v. Paulino*, 445 F.3d 211, 216 (2d Cir. 2006) ("It has long been the rule that '[s]o long as . . . statements are not presented for the truth of the matter asserted, but only to establish a context . . ., the defendant's Sixth Amendment rights are not transgressed.' Nothing in *Crawford v. Washington* is to the contrary." (citation omitted and alterations in original)).

The district court instructed the jury that the statements made by John Gotti in the Marion recordings were not admitted for the truth of the matters asserted but rather to show the effect of John's statements on Peter. We find no error.

## II. Sentencing Challenges

### A. Constitutionality of sentences imposed on Gotti and Carbonaro

Gotti and Carbonaro claim the district court acted in violation of the *ex post facto* principle of the Due Process Clause by retroactive application of *United States v. Booker*, 543 U.S. 220 (2005).

After the jury arrived at a verdict, the district court asked the jury to find whether the Government had proven several sentencing Guidelines factors beyond a reasonable doubt. At the time, *Booker* was on the Supreme Court calendar but had not yet been decided. The district court

9

took this precaution in light of the uncertainties raised by the Supreme Court's ruling in *Blakeley v. Washington*, 542 U.S. 296 (2004). The Government noted that the necessity of the jury findings would depend on how the Court decided *Booker*: "Once the Supreme Court renders its decision, it may be back in this Court's province to make that [sentencing] determination . . . ." The jury found none of the sentencing Guidelines factors proven beyond a reasonable doubt.

By the time of sentencing, the Supreme Court had decided *Booker*, which preserved the authority of the sentencing judge to find facts associated with sentencing. In light of *Booker*, the district court found several factors proven by a preponderance of the evidence and applied them in calculating the applicable Guidelines offense levels. Gotti and Carbonaro claim this was a violation of *ex post facto* principles. The defendants' arguments are foreclosed by this court's holding in *United States v. Fairclough*, 439 F.3d 76 (2d Cir. 2006), that the application of *Booker* to a defendant who had not yet been sentenced when *Booker* was announced does not violate the *ex post facto* principle. *See id.* at 79 ("[T]here was no *ex post facto* problem . . . because [defendant] had fair warning that his conduct was criminal, that enhancements or upward departures could be applied to his sentence under the Guidelines based on judicial fact-findings, and that he could be sentenced as high as the statutory maximum . . . .").

**B.      Reasonableness of Gotti's sentence**

Gotti contends that his sentence was "greater than necessary to comply with the purposes" of sentencing set forth in paragraph 2 of 18 U.S.C. § 3553(a) and therefore illegal. He argues that the district court should have weighed more heavily his age, health, and undischarged sentence remaining from a prior conviction for shipping industry extortion.

A sentencing determination is reviewed for reasonableness. The reviewing court does not

10

substitute its judgment for that of the sentencing judge, but rather considers "whether the sentencing judge 'exceeded the bounds of allowable discretion[,] . . . committed an error of law in the course of exercising discretion, or made a clearly erroneous finding of fact.'" *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006) (quoting *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005) (alterations in original)).

The district court imposed a sentence within the Guidelines range after noting that "[t]he facts relevant under Section 3553(a) strongly support a lengthy sentence." The court considered Gotti's age and health, noting that "defendant's contention that he is no longer a threat to society because of his age and medical conditions is belied by the trial testimony establishing that he, like the other leaders of the Gambino family, need only to direct subordinates to commit the criminal acts from which he profited." As for Gotti's undischarged sentence, the district court ruled that "Section 3553(a), especially the goals of punishment and deterrence, favor a lengthy sentence. . . . The defendant's conduct as part of the shipping industry extortion was distinct from his construction industry activities and the plan to murder Gravano." We find nothing unreasonable in the sentence.

## C.    Reasonableness of Carbonaro's sentence

Carbonaro argues that the district court acted unreasonably when it imposed consecutive sentences in accordance with the "stacking" provision required under the Guidelines. *See* U.S.S.G. § 5G1.2(d) ("[T]he sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.").

Carbonaro argues that the district court should have exercised its discretion under *Booker*

11

to impose a lower sentence because the individual sentences were for similar conduct and thus should not have run consecutively. The district court considered the § 3553(a) factors, finding that "[t]he defendant has repeatedly shown his willingness to murder other human beings as part of his membership in an ongoing and widespread criminal enterprise, and his criminal history unmistakably demonstrates that he is unlikely to lead a law-abiding life if released from custody. Only the maximum penalty that the law permits is sufficient in this case." The district court did not act unreasonably in imposing a sentence within the Guidelines range. *See Fernandez*, 443 F.3d at 27 (citing *Crosby*, 397 F.3d at 114).

### D. Reasonableness of Matera's sentence

Matera argues that the district court abused its discretion in declining to make his federal sentence concurrent with a previously imposed sentence that he was then still serving. Matera argued at his sentencing proceeding that the court should consider that since going to jail on the previous sentence he had made an effort to change his life.

At the time of his sentencing hearing, Matera had 16 months remaining from a previously imposed sentence in the Eastern District of New York. The district court had discretion to impose a concurrent, partially concurrent, or consecutive sentence. *See* 18 U.S.C. § 3584(a) ("if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively"); U.S.S.G. § 5G1.3(c) ("the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense"). The district court found that despite Matera's claim of good conduct while in prison, a consecutive sentence best reflected the seriousness of his crime.

12

**Matera A850**.

"[A] district court's sentencing decisions under § 5G1.3(c) will not be overturned absent an abuse of discretion." *United States v. Livorsi*, 180 F.3d 76, 82 (2d Cir. 1999); *see also United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) (noting that section 5G1.3(c) vests "broad discretion" in the sentencing court to fashion an appropriate sentence). In determining whether to impose a concurrent sentence, the sentencing court "shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b). We find no abuse of discretion.[1]

## III. Other challenges

### A. Venue

Carbonaro argues that the Government failed to establish venue in the Southern District of New York for Count Three, the conspiracy to murder Frank Hydell. "Both the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was 'committed.'" *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005). Carbonaro argues that because Hydell was murdered in Staten Island and discussions before and after the murder took place in Brooklyn, the crime was not "committed" in the Southern District of New York. Carbonaro, however, failed to object to venue at any point during the district court proceedings. We held in *United States v. Bala*, 236 F.3d 87, 96 (2d Cir. 2000), that a defendant's objections to venue are waived unless specifically articulated. Carbonaro therefore failed to preserve his objections to venue.

---

[1] In view of our conclusion that there was no abuse of discretion, we need not rule on the Government's contention that in his plea agreement Matera waived the right to raise this claim on appeal.

13

**B.     Ineffective assistance of counsel**

Matera argues that the district court erred in failing to make an inquiry as to any potential conflict of interest between Matera and his then-counsel who subsequently represented another person who was suspected of participating in the conspiracy to murder Hydell.

On June 15, 2004, Jeffrey Lichtman, Esq. replaced Matera's prior counsel and represented Matera when he pled guilty on August 31, 2004, and at his sentencing on October 29, 2004. On September 20, 2004, after Matera had pled guilty but before his sentencing, Lichtman was appointed by the United States District Court for the Eastern District of New York to represent one Thomas Dono in criminal proceedings. Lichtman then represented Dono in a RICO conspiracy charge unrelated to the conspiracy to murder Hydell.

Matera argues that the district court erred in failing to make an inquiry as to any potential conflict of interest. The judge, however, had no notice of the appointment of Matera's counsel in another court to represent Dono, much less of the fact that Dono was suspected of complicity in the Hydell murder. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980). The court had no reason to make such an inquiry. Furthermore, to overturn his conviction on the basis of his attorney's conflict of interest resulting in ineffective assistance of counsel, Matera must at the very least show some possibility of prejudice he suffered by reason of the conflict. *See United States v. Kliti*, 156 F.3d 150, 157 (2d Cir. 1998); *Tate v. Wood*, 963 F.2d 20, 26 (2d Cir. 1992). Matera cannot. Matera had already pleaded guilty before the potential conflict arose and in his plea agreement he had already stipulated that he would receive a sentence of twenty years imprisonment, which was the sentence he received. Matera has shown

no real possibility that any conflict of his counsel might have adversely affected the representation.

## Conclusion

We have considered defendant-appellants' other arguments and find them to be without merit.  We affirm the judgments of the district court.