20-2143-cr
*United States v. Giovinco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

      **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of November, two thousand twenty-one.**

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
>     *Circuit Judges*.

---

United States of America,

      *Appellee*,

      v.                                20-2143-cr

Vincent Esposito, Steven Arena, Frank Cognetta, Vincent D'Acunto, Jr.,

      *Defendants*,

Frank Giovinco,

      *Defendant-Appellant*.

---

FOR APPELLEE:                         KIMBERLY J. RAVENER, Assistant United States Attorney (Jason A. Richman, Justin V. Rodriguez, Anna M. Skotko, Assistant

United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:                    MALVINA NATHANSON, ESQ., New York, NY.

Appeal from a judgment of conviction of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Frank Giovinco appeals from a judgment of conviction, entered on June 25, 2020, by the United States District Court for the Southern District of New York (Rakoff, *J.*). Following a five-day jury trial, Giovinco was convicted of conspiracy to conduct and to participate in the affairs of a racketeering enterprise in violation of 18 U.S.C. § 1962(d), as well as conspiracy to commit extortion in violation of 18 U.S.C. § 1951(a). Specifically, Giovinco was convicted for his participation in several kickback, extortion, and fraud schemes—perpetuated by fellow members and associates of the Genovese Crime Family of La Cosa Nostra—to exercise control over and gain illicit profits from two local chapters of a labor union, namely, Local 1-D and Local 2-D of the United Food & Commercial Workers Union (the "Union"). The district court sentenced Giovinco principally to 48 months' imprisonment.

On appeal, Giovinco challenges several of the district court's evidentiary rulings, asserting that the district court erred by allowing the admission of: (1) Giovinco's prior New York state conviction for attempted enterprise corruption; (2) the testimony of multiple witnesses as to their understanding of Giovinco's alleged membership in the Genovese Crime Family; and (3) the

testimony of organized crime expert Special Agent John Carillo.  Additionally, Giovinco argues that the evidence presented at trial was insufficient to convict him of conspiracy to commit extortion.   We assume the parties' familiarity with the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

## I.   Evidentiary Rulings

We review a district court's "evidentiary rulings for abuse of discretion."  *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).   Due to their "superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice," *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010), "district courts enjoy broad discretion over the admission of evidence."   *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001). Accordingly, we will second-guess "a district court's ruling on admissibility only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally."   *United States v. Valdez*, 16 F.3d 1324, 1332 (2d Cir. 1994).

### a.  Giovinco's Prior Conviction

Giovinco challenges the admission of a stipulation describing his prior conviction for attempted enterprise corruption in violation of New York Penal Law § 460.20.   The stipulation stated that, in connection with that prior conviction, Giovinco admitted to committing acts of extortion to restrain competition in the private carting industry in New York City and keep prices and profits artificially high.   One of Giovinco's co-conspirators in that case was a captain in the Genovese Crime Family.   On appeal, Giovinco argues that the evidence of his prior conviction (1) was not relevant to the charged conduct and (2) should have been excluded under Federal Rule of Evidence 403 as its probative value was substantially outweighed by its prejudice.

3

Federal Rule of Evidence 404(b) prohibits the admission of evidence of a person's other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such evidence is admissible if introduced for another purpose, such as motive, opportunity, knowledge, or intent. *Id.*; *United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000). Further, evidence of a defendant's uncharged prior criminal conduct is admissible without reference to Rule 404(b) if that conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (internal quotation marks omitted); *see also United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."). In such circumstances, the charged conduct is "appropriately treated as part of the very act charged or, at least, proof of that act." *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal quotation marks omitted). Here, we conclude that the district court did not abuse its discretion in admitting evidence of Giovinco's prior conviction as both background to, and direct evidence of, the charged conduct.

With respect to the use of the evidence as background to the racketeering offense, the government alleged that, as part of the extortion scheme targeting Union president Vincent Fyfe, the Genovese Crime Family attempted to exert control over the Union by repeatedly pressuring Fyfe to hire Giovinco. Giovinco's prior conviction barred him from working for a labor union for many years after his release from prison, but Fyfe testified that Giovinco and another co-

4

conspirator approached him about a Union position as the ban was expiring. For example, in a recorded conversation with Giovinco in 2015, Fyfe explained to Giovinco that the prior conviction would be an "immediate red flag" and Giovinco attempted to persuade him otherwise. Notwithstanding the pressure exerted upon him by the Genovese Crime Family relating to a Union position for Giovinco, and the fact that Fyfe was already making annual extortion payments to the criminal enterprise out of fear, Fyfe ultimately did not agree to give Giovinco a position, citing the attention that Giovinco's criminal history would bring to the Union. Under these circumstances, the prior conviction was "inextricably intertwined" with the conversations with Fyfe surrounding that conviction and the extortion of Fyfe charged as part of the racketeering offense in the indictment, and was "necessary to complete the story of the crime on trial." *Robinson*, 702 F.3d at 37 (internal quotation marks omitted).

Moreover, we have on multiple occasions in racketeering cases allowed the introduction of evidence of prior convictions to prove an essential element of the crime charged—*i.e.*, "the existence of a criminal enterprise in which the defendants participated." *See United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (affirming a district court's admission of evidence of uncharged crimes committed by members of the same enterprise to prove the existence of a RICO enterprise); *accord United States v. Mejia*, 545 F.3d 179, 206–07 (2d Cir. 2008). The district court properly recognized that Giovinco's prior conviction was for conduct he undertook related to the Genovese Crime Family, the same enterprise at issue in the trial. Moreover, while Giovinco was incarcerated for the prior conviction, he identified himself as a part of the Genovese Family to John Pennisi, who also testified that Giovinco's co-conspirator in the prior conviction, Alphonse Malangone ("Allie Shades"), was a Genovese captain. In short, there was a more than

5

sufficient basis for the district court to find that Giovinco's prior conviction was properly "admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994).

We also disagree with Giovinco's contention that he was unduly prejudiced by the admission of the stipulation describing his prior conviction. Although evidence may be excluded "if its probative value is substantially outweighed by," among other risks, the danger of "unfair prejudice," Fed. R. Evid. 403, we conclude that the district court did not abuse its discretion in conducting the Rule 403 balancing, especially where the prior conduct "[does] not involve conduct more serious than the charged crime," and the proof of the prior conviction was offered through a stipulation containing only admissible facts. *Williams*, 205 F.3d at 34. Moreover, the district court further mitigated the risk of any potential prejudice by providing a limiting instruction to the jury. Accordingly, the district court did not abuse its discretion by admitting the evidence of Giovinco's prior conviction.[1]

### b. Testimony Regarding Giovinco's Membership in the Genovese Crime Family

Federal Rule of Evidence 701 limits opinion testimony by a lay witness to testimony that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Giovinco contends that the testimony of three cooperating witnesses—Clifford Moss, Fyfe, and Pennisi—

---

[1] Although the government argues that Giovinco's prior conviction "was also admissible under 404(b) as proof of Giovinco's motive, opportunity, intent, preparation, plan, knowledge, and *modus operandi*," Appellee's Br. at 22, we need not address this alternative argument (which was not the basis of the district court's ruling) given the admissibility of the prior conviction on the other grounds discussed above.

regarding their understanding of Giovinco's membership in the Genovese Crime Family was not rationally based upon "facts they perceived from their own senses" and thus inadmissible under Rule 701(a). Appellant's Br. at 37–38.

Contrary to Giovinco's assertion, Moss, Fyfe, and Pennisi's testimony was properly based on their own rational perceptions—*i.e.*, based upon their "first-hand knowledge or observation." *United States v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008) (internal quotation marks omitted). More specifically, each of these witnesses testified about their own first-hand interactions with Giovinco and his co-conspirators that formed the basis of their understanding of Giovinco's membership in the Genovese Crime Family. For example, Moss testified that he (Moss) was an associate of the Genovese Family and described his relationships with Giovinco and his co-conspirators, all of whom Moss understood to be "member[s] of the family," Dist. Ct. Dkt. No. 326 at 105, 112, and who got Moss involved with the relevant unions via their "connections with the mob," Dist. Ct. Dkt. No. 328 at 147. Moss further detailed a conversation with a co-conspirator during which he learned that Giovinco was a "made guy," which he testified to understanding as meaning Giovinco was "very high up . . . in the Genovese family." Dist. Ct. Dkt. No. 328 at 197. Moss also described meetings with Giovinco that confirmed this understanding, including Giovinco telling him that he could get him into the Union and that another co-conspirator was "under" him, which alleviated any concern about doing business with Giovinco. Dist. Ct. Dkt. No. 328 at 147.

Similarly, Pennisi testified to his own involvement with organized crime as a member of the Lucchese Crime Family. He described a meeting with Giovinco in prison where Giovinco described himself to Pennisi as "an officer and a gentleman," which Pennisi understood to mean

7

that Giovinco was a "made member" of a crime family.    Dist. Ct. Dkt. No. 330 at 419.    Pennisi also testified that Giovinco admitted that he "report[ed] to Johnny Sausage" and was "groomed" by "Benny Eggs," both of whom Pennisi testified to personally knowing as being members of the Genovese Crime Family.    Dist. Ct. Dkt. No. 330 at 419–20.

Finally, Fyfe testified to his own history with organized crime, particularly that his grandfather was once the head of the Genovese Crime Family and that his uncle, one of Giovinco's co-conspirators, was a current member of the enterprise.    Further, Fyfe testified about recorded conversations in which he discussed Giovinco with other co-conspirators, and that, based on those conversations, he understood that Giovinco was an "old-time wise guy" and "an official member of organized crime."    Dist. Ct. Dkt. No. 332 at 533–34, 543.

In sum, there was a more than sufficient evidentiary foundation to establish that each cooperating witness's understanding of Giovinco's membership in the Genovese Crime Family was rationally based on their own perceptions of interactions with Giovinco and other co-conspirators.    Accordingly, we conclude that there was no abuse of discretion in the admission of this testimony.

### c.  Expert Witness Testimony

Giovinco also asserts that the testimony offered by government witness Special Agent John Carillo went beyond the scope of what is permissible for expert testimony and thus deprived Giovinco of a fair trial.    As discussed below, we find no abuse of discretion in the admission of this expert testimony.

Under Federal Rule of Evidence 702, a district court may admit testimony by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if the expert's

"specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Mejia*, 545 F.3d at 188–89. Such testimony is appropriate "when the untrained layman would be unable intelligently to determine the particular issue in the absence of guidance from an expert." *Mejia*, 545 F.3d at 189 (internal quotation marks omitted). As the inner workings of criminal enterprises are mostly "outside the expectable realm of knowledge of the average juror," *Daly*, 842 F.2d at 1388, we have, on multiple occasions, approved of "the use of expert testimony to help explain the operation, structure, membership, and terminology of organized crime families," *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993); *United States v. Amuso*, 21 F.3d 1251, 1263–64 (2d Cir. 1994).

At trial, the government presented the testimony of Carillo, who testified generally about: the structure of La Cosa Nostra and the families therein, including the Genovese Crime Family; the types of illegal activities La Cosa Nostra members are involved in and how they operate; the type and method of the extortion operations run by La Cosa Nostra; the historical relationship between the mafia and labor unions; and the typical insurance and kickback schemes that mafia members run through unions. The scope of Carillo's testimony was of the same type that we have previously held to be a proper subject for expert testimony, and we find no basis to reach a different conclusion here.[2] *See, e.g.*, *Matera*, 489 F.3d at 121 (concluding that the district court properly admitted expert testimony about "the composition and structure of New York organized crime families").

---

[2] Indeed, on prior occasions, we have found Carillo's testimony on substantially similar topics to be permissible. *See United States v. Castelle*, 836 F. App'x 43, 45–46 (2d Cir. 2020) (summary order); *United States v. Dey*, 409 F. App'x 372, 374 (2d Cir. 2010) (summary order).

Giovinco contends that Carillo's testimony impermissibly "touched directly on the acts on which the charges were based," asserting that Carillo's testimony regarding "mob-influenced unions" was about "precisely the specific behavior claimed to have been committed by the enterprise in this prosecution and by Giovinco as a member of the enterprise." Appellant's Br. at 48. Giovinco's arguments, however, are unpersuasive. Although an expert witness's testimony may not "impermissibly mirror[] the testimony offered by fact witnesses," the mere fact of some overlap between an expert witness's testimony and that of fact witnesses "does not prohibit the expert from also testifying on [the] subject." *See Amuso*, 21 F.3d at 1263–64. Here, although Carillo testified generally about criminal conduct within the enterprise similar to the conduct Giovinco was charged with, Carillo did so in the context of providing general background information and did not discuss the specific crimes charged, nor did he ever mention Giovinco himself.[3]

Accordingly, we conclude that the district court did not abuse its discretion in admitting Carillo's expert testimony.

## II. The Sufficiency of the Evidence

Giovinco argues that the weight of the evidence adduced at trial was insufficient to convict him of conspiracy to commit extortion.[4] As discussed below, we conclude that the weight of the evidence was sufficient to convict Giovinco on the charged crime.

---

[3] Moreover, although Giovinco also argues on appeal that the district court's limiting instruction to the jury regarding Carillo's testimony was not sufficiently specific "to ensure that the jury did not give undue weight to Carillo's opinions," Appellant's Br. at 48, we find that the district court's limiting instruction properly circumscribed the testimony to ensure it did not exceed the permissible bounds of Rule 702, *Matera*, 489 F.3d at 121.

[4] Giovinco does not challenge the sufficiency of the evidence on the racketeering offense charged in Count

We review challenges to the sufficiency of trial evidence *de novo*. *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019). In so doing, we examine the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Sheehan*, 838 F.3d 109, 119 (2d Cir. 2016) (internal quotation marks omitted). Thus, given "our exceedingly deferential standard of review," *United States v. Hasan*, 578 F.3d 108, 126 (2d Cir. 2008), we are cognizant that the defendant "bears a very heavy burden," *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002). In sum, a conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To convict Giovinco of conspiracy to commit extortion, the government was required to prove that Giovinco "conspired and agreed with others to commit extortions of a financial advisor and of a labor union official, by using threats of force and violence, and by causing the victims to fear injury and economic harm in order to collect and attempt to collect payments from the victims." Dist. Ct. Dkt. No. 335 at 829. Extortion does not require evidence of an "implicit or explicit threat," *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998), but instead only requires "evidence that the defendant knowingly and willfully created or instilled fear, or used or exploited existing fear with the specific purpose of inducing another to part with property," *United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012).

---

One.

11

Construing the trial record in the light most favorable to the government, the evidence at trial established, among other things, the following: Frank Cognetta and Clifford Moss—victims of the conspiracy—understood that Giovinco and his co-conspirators were affiliated with the Genovese Crime Family; Giovinco repeatedly pressured Moss about the Union business Moss and Cognetta conducted without the knowledge and permission of the Genovese Crime Family, making Moss "nervous," "intimidated," and "very, very scared," Dist. Ct. Dkt. No. 328 at 178, 191, 197; Giovinco used Cognetta and Moss's understanding of his organized crime connections to make both implied and explicit threats of force or violence; Cognetta informed Moss that Giovinco's co-conspirators were "threatening [Cognetta's] life," Dist. Ct. Dkt. No. 328 at 242–43; and Giovinco obtained $5,000 from Moss and attempted to obtain an additional $30,000 from Cognetta. Accordingly, we cannot conclude that the evidence was insufficient for a reasonable jury to find guilt beyond a reasonable doubt.

To the extent Giovinco contends that the evidence failed to demonstrate that Cognetta and Moss were ever "threatened with force, violence, or fear," Appellant's Br. at 49, we are unpersuaded. In light of the evidence adduced at trial, including numerous recordings of meetings and phone calls with Giovinco, the expert testimony of two law enforcement officers, and the testimony of three cooperating witnesses, we conclude there was ample evidence from which the jury could have inferred that Giovinco entered into a conspiracy to extort payments from Moss and Cognetta through threats of the use of force and violence. Moreover, we have emphasized that "where an organized crime enterprise cultivates a reputation for violence and intimidation in achieving its conspiratorial goal of control throughout an industry or area, a jury

12

may reasonably consider that reputation in assessing whether payments were induced by the exploitation of existing fear." *Coppola*, 671 F.3d at 242.

In sum, when considered "in the light most favorable to the government," *Sheehan*, 838 F.3d at 119, we find that there was sufficient evidence to convict Giovinco of conspiracy to commit extortion.

\*                    \*                    \*

We have considered all of Giovinco's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of conviction of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13