In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1896

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FELIPE PADILLA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:04-cr-00784-2—**Samuel Der-Yeghiayan**, *Judge*.

ARGUED JULY 8, 2010—DECIDED AUGUST 19, 2010

Before BAUER, RIPPLE, and WILLIAMS, *Circuit Judges*.

PER CURIAM. Felipe Padilla pleaded guilty to distributing crack cocaine. *See* 21 U.S.C. § 841(a)(1). He faced a statutory minimum sentence of 240 months because previously he had been convicted of a felony drug offense. *See id.* § 841(b)(1)(A). Explaining that Padilla had an "atrocious" criminal history and represented a "significant danger to the public," the district court sentenced him to 327 months' imprisonment. Padilla ap-

peals, but because his sentence is reasonable, we affirm the judgment.

Padilla was indicted after selling crack cocaine to an undercover agent. *See United States v. Padilla*, 520 F.3d 766, 768 (7th Cir. 2008). He pleaded guilty, and a probation officer calculated a Guidelines range of 151 to 188 months' imprisonment. *Id.* at 769, 772. But Padilla faced a statutory minimum of 240 months' imprisonment under 21 U.S.C. § 841(b)(1)(A) because previously he had been convicted of a felony drug offense, so the officer applied U.S.S.G. § 5G1.1(b) and determined that the Guideline sentence was also 240 months. *Id.* at 772. The district court sentenced Padilla to an above-Guidelines term of 327 months' imprisonment. *Id.* at 772-73. We vacated the judgment and remanded for resentencing because it was not possible to say whether the district court would have imposed the same term of imprisonment had it known about its discretion under *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007), to consider "the harsh effects of the crack sentencing disparity." *Padilla*, 520 F.3d at 774. Aside from agreeing that Padilla's Guideline range was indeed 240 months, we reserved decision on all other sentencing issues. *Id.* at 773.

On remand a probation officer alerted the district court that, since his first sentencing, Padilla had been involved in two prison incidents. According to prison officials, Padilla solicited the murder of an inmate who cooperated with the government; Padilla admitted writing to a fellow gang member a note that commanded

"take care of it" but denied providing a homemade weapon to use in the attack. Prison officials also reported that, a few weeks later, Padilla attacked the same inmate whose murder he had allegedly solicited, repeatedly smashing his handcuffs against his victim's head.

At sentencing Padilla did not address "the harsh effects of the crack sentencing disparity," the very issue that had prompted our remand. Instead he argued that the statutory minimum sentence of 240 months was "more than sufficient punishment." In addition he requested that his sentence run concurrent to three undischarged terms of imprisonment he faced on unrelated state charges. He insisted that, as demonstrated by his participation in several prison self-improvement programs, he had changed his ways. By the time he had served the mandatory minimum sentence, he emphasized, he would be an "old man unlikely to recidivate." As for the suggestion that he had tried to solicit the murder of a fellow inmate, he noted that he had never been charged and that those allegations had not been proven in court.

The district court again sentenced Padilla to 327 months' imprisonment. Emphasizing Padilla's "remarkably extensive criminal history," the "serious infractions" he had committed in prison, and his repeated failure "to turn his life around and to show his respect for the law," the court enumerated a total of 10 justifications for its above-Guidelines sentence:

> (1) [T]he large number of prior criminal convictions for this defendant, (2) the violent nature of many of the[] defendant's prior criminal convictions, (3) the

fact that defendant has a history of unlawful use of a dangerous weapon[], (4) the fact that prior prison sentences have had no effect on deterring the defendant or providing in this defendant a respect for the law, (5) the fact that the defendant has an undeniable affiliation with a violent street gang, (6) the fact that the defendant's criminal history category dramatically understates this defendant's prior criminal conduct, (7) the fact that the instant crime was serious to the extent that it involved a large and sophisticated drug transaction in the form of crack cocaine, (8) the fact that the instant offense was committed close in time to the defendant's release from a prior offense and in fact while the defendant was still on parole for that offense, (9) the fact that the defendant has engaged in serious infractions at his institution of incarceration during the time since his first sentence in this case, and (10) the fact that the defendant clearly represents a significant danger to the public . . . .

The court further noted that Padilla had accumulated 27 criminal-history points, which placed him in Category VI. Because a mere 13 criminal-history points are sufficient to place a defendant in Category VI, the district court explained, Padilla "could have committed half of the number of crimes that he has committed and would still be in the . . . category . . . that is reserved for the offenders with the [worst] criminal history." Plus, the court continued, six of the felonies that Padilla had committed were crimes of violence. The district court also ordered that Padilla's sentence run consecutive to his

undischarged state sentences, focusing in particular on the need to protect the public. Padilla's "criminal history, his gang activities, his violent crimes and violent behavior, and his involvement with the distribution of large quantities of drugs are all factors that make [him] a danger," the court concluded. Finally the court noted that, although neither party had addressed "the harsh effects of the crack sentencing disparity," it had nevertheless considered this element in reaching an appropriate sentence.

On appeal Padilla contends that his above-Guidelines sentence is unreasonable. He argues that, although the district court recited the sentencing factors enumerated in 18 U.S.C. § 3553(a), "it never connected these purposes to the need to impose such an excessive sentence." But that simply is not true. In considering Padilla's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), for example, the court highlighted his "remarkably extensive" criminal record before concluding that he was a "perpetual offender" who had not been deterred by previous stints in jail. And in considering the need to promote respect for the law, *see id.* § 3553(a)(2)(A), the court described Padilla as an "incorrigible offender" who repeatedly "had the opportunity to turn his life around and to show his respect for the law and in every case he failed to do so." Finally, citing Padilla's history of violence and recidivism, the court identified a significant need both to deter him from engaging in future criminal activity and to protect the public. *See id.* § 3553(a)(2)(B), (C). The district court's thorough and thoughtful application of the statutory

factors to the facts of Padilla's case produced a sentence firmly anchored to the considerations required by § 3553(a). And the court's explanation for imposing an above-range sentence is sufficiently compelling to justify the degree of departure from the Guidelines. *See Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Angle*, 598 F.3d 352, 359 (7th Cir. 2010).

Next Padilla assails the district court's "blind" conclusion that his criminal-history category underrepresented his record. Although he does not dispute his 27 criminal-history points, he insists that, in determining the degree to which his sentence departed from the Guidelines, the court should have employed the "incremental analysis" outlined in U.S.S.G. § 4A1.3(a)(4)(B). Section 4A1.3(a)(4)(B) provides that, if a defendant's criminal history is underrepresented by Category VI, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." *See generally United States v. Cross*, 289 F.3d 476, 478 (7th Cir. 2002) (discussing several ways to fulfill § 4A1.3(a)(4)(B)'s mandate). But Padilla fails to acknowledge that, as a consequence of *United States v. Booker*, 543 U.S. 220 (2005), the court was not required to follow § 4A1.3; it need articulate its sentence only with reference to the § 3553(a) factors. *See United States v. Jackson*, 547 F.3d 786, 793 (7th Cir. 2008); *United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005). And as we explained above, that is precisely what the district court did.

Padilla also urges that the district court misapplied 18 U.S.C. § 3553(a)(2)(C) because it "made no attempt to reconcile the need to protect the public with its belief that Padilla at least was trying to change." But as the court made clear, while it hoped that Padilla indeed had learned from his mistakes, it could not ignore his high risk of recidivism. Nor could the court reconcile Padilla's assertion that he had changed his ways with the "serious infractions" he had committed in prison.

Padilla next charges that the district court's reasoning on remand was "no more thorough or considered" than its explanation at his first sentencing. He insists that the court "basically repeated" the same reasons it articulated the first time around. But although we previously characterized the court's explanation for Padilla's sentence as "slim at best," we did not instruct the court to find *different* justifications for its above-Guidelines sentence; rather we told the court to expound upon those justifications it had already provided and anchor them to the § 3553(a) factors. *Padilla*, 520 F.3d at 775. And indeed the court extensively considered the § 3553(a) sentencing factors in an analysis that spans five pages of the sentencing transcript.

Finally Padilla contends that, by ordering his sentence to run consecutive to his undischarged state sentences, the district court ran afoul of U.S.S.G. § 5G1.3(b), which requires concurrent sentences under certain circumstances. But § 5G1.3(b) does not apply because Padilla's undischarged sentences do not encompass "relevant conduct . . . that was the basis for an increase in the

offense level for the instant offense." And, contrary to Padilla's suggestion, the fact that the court considered these undischarged sentences in assessing his criminal history is insufficient to bring them within the ambit of § 5G1.3(b). Therefore the decision whether to order Padilla's federal sentence to run consecutive or concurrent to his undischarged state sentences was entrusted to the court's discretion, guided by the § 3553(a) sentencing factors. *See* 18 U.S.C. § 3584(a), (b); U.S.S.G. § 5G1.3(c); *United States v. Bangsengthong*, 550 F.3d 681, 683-84 (7th Cir. 2008). Because the court conducted an intelligent and exhaustive analysis of the § 3553(a) factors, its decision to impose a consecutive sentence was reasonable.

AFFIRMED.