(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SETSER *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 10–7387.   Argued November 30, 2011—Decided March 28, 2012

When petitioner Setser was indicted in a Texas court on drug charges, the State also moved to revoke the probation term that he was then serving for another drug offense.  At about the same time, Setser pleaded guilty to federal drug charges.  The Federal District Court imposed a 151-month sentence to run consecutively to any state sentence imposed for the probation violation, but concurrently with any state sentence imposed on the new drug charge.  While Setser's federal appeal was pending, the state court sentenced him to 5 years for the probation violation and 10 years for the drug charge, but ordered the sentences to be served concurrently.  The Fifth Circuit affirmed the federal sentence, holding that the District Court had authority to order a sentence consecutive to an anticipated state sentence, and that Setser's sentence was reasonable, even if the state court's decision made it unclear exactly how to administer it.

*Held*:

  1. The District Court had discretion to order that Setser's federal sentence run consecutively to his anticipated state sentence for the probation violation.  Pp. 2–12.

    (a) Judges have traditionally had broad discretion in selecting whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings, see *Oregon* v. *Ice*, 555 U. S. 160, 168–169.  The statutory text and structure do not foreclose a district court's exercise of this discretion with respect to anticipated state sentences.  The Sentencing Reform Act of 1984 addresses the concurrent-vs.-consecutive decision, but not the situation here, since the District Court did not impose "multiple terms of imprisonment . . . at the same time," and Setser was not "al-

ready subject to" the state sentences at issue, 18 U. S. C. §3584(a). This does not mean, as Setser and the Government claim, that the District Court lacked authority to act as it did and that the Bureau of Prisons is to make the concurrent-vs.-consecutive decision after the federal sentence has been imposed. Section 3621(b), from which the Bureau claims to derive this authority, says nothing about concurrent or consecutive sentences. And it is more natural to read §3584(a) as leaving room for the exercise of judicial discretion in situations not covered than it is to read §3621(b) as giving the Bureau what amounts to sentencing authority. Setser's arguments to the contrary are unpersuasive. Pp. 2–8.

    (b) None of the other objections raised by Setser and the Government requires a different result. Pp. 8–12.

    2. The state court's subsequent decision to make the state sentences run concurrently does not establish that the Federal District Court imposed an unreasonable sentence. The difficulty here arises not from the federal-court sentence—which is to run concurrently with one state sentence and consecutively with another—but from the state court's decision. Deciding which of the District Court's dispositions should prevail under these circumstances is a problem, but it does not show the District Court's sentence to be unlawful. The reasonableness standard for reviewing federal sentences asks whether the district court abused its discretion, see *Gall* v. *United States*, 552 U. S. 38, 46, but Setser identifies no flaw in the District Court's decisionmaking process, nor anything available at the time of sentencing that the court failed to consider. Where late-onset facts make it difficult, or even impossible, to implement the sentence, the Bureau of Prisons may determine, in the first instance, how long the District Court's sentence authorizes it to continue Setser's confinement, subject to the potential for judicial review. Pp. 12–14.

607 F. 3d 128, affirmed.

    SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. BREYER, J., filed a dissenting opinion, in which KENNEDY and GINSBURG, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–7387

## MONROE ACE SETSER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[March 28, 2012]

JUSTICE SCALIA delivered the opinion of the Court.

We consider whether a district court, in sentencing a de-
fendant for a federal offense, has authority to order that
the federal sentence be consecutive to an anticipated state
sentence that has not yet been imposed.

I

When officers of the Lubbock Police Department ar-
rested petitioner Monroe Setser for possessing metham-
phetamine, he was already serving a 5-year term of proba-
tion imposed by a Texas court for another drug offense.
Setser was indicted in state court for possession with intent
to deliver a controlled substance, and the State also moved
to revoke his term of probation. As often happens in drug
cases, the federal authorities also got involved. A federal
grand jury indicted Setser for possessing with intent to
distribute 50 grams or more of methamphetamine, 21
U. S. C. §841(a)(1), (b)(1)(A)(viii), and he pleaded guilty.

Before the federal sentencing hearing, a probation of-
ficer calculated the applicable Guidelines range to be 121
to 151 months' imprisonment. Citing precedent from
the United States Court of Appeals for the Fifth Circuit,

*United States* v. *Brown*, 920 F. 2d 1212 (1991) *(per curiam),* he indicated that the District Court had discretion to make Setser's sentence either concurrent with or consecutive to any sentence anticipated in the separate state-court proceedings. Setser objected, arguing that the District Court lacked such authority. The court nevertheless made the sentence of 151 months that it imposed consecutive to any state sentence imposed for probation violation, but concurrent with any state sentence imposed on the new drug charge. Setser appealed.

While Setser's appeal was pending, the state court sentenced him to a prison term of 5 years for probation violation and 10 years on the new drug charge. It ordered that these sentences be served concurrently. Setser then made before the Court of Appeals, in addition to the argument that the District Court had no authority to order a consecutive sentence, the argument that his federal sentence was unreasonable because it was impossible to implement in light of the concurrent state sentences.

The Court of Appeals for the Fifth Circuit affirmed. 607 F. 3d 128 (2010). Following its earlier *Brown* decision, the court held that the District Court did have authority to order a consecutive sentence. 607 F. 3d*,* at 131–132. It also held that Setser's sentence was reasonable, even if it was "'partially foiled'" by the state court's decision. *Id.,* at 132–133. We granted certiorari, 564 U. S. ___ (2011), and appointed an *amicus curiae* to brief and argue this case in support of the judgment below, 564 U. S. ___ (2011).

## II

Before proceeding further, it is important to be clear about what is at issue. Setser does not contend that his federal sentence must run concurrently with both state sentences imposed after his federal sentencing hearing. He acknowledges that *someone* must answer "the consecutive versus concurrent question," Brief for Petitioner 27,

and decide how the state and federal sentences will fit together. The issue here is *who* will make that decision, which in turn determines *when* that decision is made. One possible answer, and the one the Fifth Circuit gave, is that the decision belongs to the Federal District Court at the federal sentencing hearing.

The concurrent-vs.-consecutive decision has been addressed by §212(a) of the Sentencing Reform Act of 1984, 18 U. S. C. §3584, reproduced in full as Appendix A, *infra.* The first subsection of that provision, which says when concurrent and consecutive sentences may be imposed, and specifies which of those dispositions will be assumed in absence of indication by the sentencing judge, does not cover the situation here. It addresses only "multiple terms of imprisonment . . . imposed . . . at the same time" and "a term of imprisonment . . . imposed on a defendant who is already subject to an undischarged term of imprisonment." §3584(a). Here the state sentence is not imposed at the same time as the federal sentence, and the defendant was not already subject to that state sentence.

Setser, supported by the Government, argues that, because §3584(a) does not cover this situation, the District Court lacked authority to act as it did; and that the concurrent-vs.-consecutive decision is therefore to be made by the Bureau of Prisons at any time after the federal sentence has been imposed. The Bureau of Prisons is said to derive this authority from 18 U. S. C. §3621(b) (2006 ed. and Supp. IV), reproduced in full as Appendix B, *infra.*

On its face, this provision says nothing about concurrent or consecutive sentences, but the Government explains its position as follows: Section 3621(b) gives the Bureau the authority to order that a prisoner serve his federal sentence in any suitable prison facility "whether maintained by the Federal Government or otherwise." The Bureau may therefore order that a prisoner serve his federal sentence in a *state* prison. Thus, when a person subject to

a federal sentence is serving a state sentence, the Bureau may designate the state prison as the place of imprisonment for the federal sentence—effectively making the two sentences concurrent—or decline to do so—effectively making them consecutive.[1]   Based on §§3584(a) and 3621(b), Setser and the Government argue that the concurrent-vs.-consecutive decision, under the circumstances presented here, is committed exclusively to the Bureau of Prisons.

It is fundamental that we construe statutes governing the jurisdiction of the federal courts in light of "the common-law background against which the statutes . . . were enacted," *New Orleans Public Service, Inc.* v. *Council of City of New Orleans*, 491 U. S. 350, 359 (1989), and the same approach is appropriate here, where the issue concerns a matter of discretion traditionally committed to the Judiciary.   Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings.   See *Oregon* v. *Ice*, 555 U. S. 160, 168–169 (2009).   And a large majority of the federal appellate courts addressing the question have recognized a similar authority in the context here, where a federal judge anticipates a state sentence that has not yet been imposed.   See *Salley* v. *United States*, 786 F. 2d 546, 547 (CA2 1986); *Anderson* v. *United States*, 405 F. 2d 492, 493 (CA10 1969) *(per curiam); United States ex rel. Lester* v. *Parker*, 404 F. 2d 40, 41–42 (CA3 1968) *(per curiam); United States* v. *Kanton*, 362 F. 2d 178, 179–180 (CA7 1966) *(per curiam);* but see *United States* v.

———————

[1] The Bureau of Prisons sometimes makes this designation while the prisoner is in state custody and sometimes makes a *nunc pro tunc* designation once the prisoner enters federal custody.

*Eastman*, 758 F. 2d 1315, 1317 (CA9 1985)[2].  We find nothing in the Sentencing Reform Act, or in any other provision of law, to show that Congress foreclosed the exercise of district courts' sentencing discretion in these circumstances.

Setser's main contention is that §3584(a) has this effect. But that provision cannot sustain the weight that Setser asks it to bear.  In essence, he reads the first sentence in §3584(a) to say that "terms [of imprisonment] may run concurrently or consecutively" *only* "[i]f multiple terms of imprisonment are imposed . . . at the same time, or if a term of imprisonment is imposed on a defendant who is

—————

[2] The dissent is incorrect to say, *post*, at 7–8 (opinion of BREYER, J.), that only the Second Circuit, in *Salley* held to that effect.  So did the Seventh Circuit in *Kanton* and the Tenth Circuit in *Anderson*.  The dissent says that *Anderson* addressed only the question "whether a federal sentence runs from the date of its imposition or from the date of entry into federal custody," *post*, at 7–8.  That is true enough (and it is true of *Kanton* as well); but answering that question in a manner that upheld the consecutive federal sentence (*i.e.*, it runs from the date of entry into federal custody) necessarily upheld the sentencing court's authority to impose the consecutive federal sentence.  In fact, *Anderson* confronted and specifically rejected the defendant's argument that "'[n]o court has the authority to impose a sentence consecutive to something that does not exist,'" 405 F. 2d, at 493.  And, finally, so did the Third Circuit in *Lester*.  The dissent says that *Lester* addressed only the question "whether a sentence was insufficiently certain for purposes of due process," *post*, at 8.  But that was the defendant's principal reason (as it appears also to be the dissent's principal reason) for asserting that the sentencing court *had no authority* to impose a consecutive sentence. And the Third Circuit rejected not only that reason but "[o]ther arguments advanced by [the defendant]" attacking the consecutive sentence, 404 F. 2d, at 42.

The only contrary federal appellate decision rendered before the Sentencing Reform Act took effect relied upon 18 U. S. C. §4082 (1982 ed.) (the predecessor of §3621) and §3568 (1982 ed.) (repealed by 98 Stat. 1987), which provided that a federal sentence "shall commence to run from the date on which such person is received" into federal custody. See *United States* v. *Eastman*, 758 F. 2d 1315, 1317 (CA9 1985).

already subject to an undischarged term of imprisonment." Since the District Court was not imposing the state sentence and since it was not already imposed, the sentence could not be ordered to run consecutively. But if the text is exclusive—if the addition of *only* is correct—the provision forbids not only the imposition of consecutive sentences, but the imposition of concurrent ones as well. And yet, as Setser acknowledges, it must be one or the other; *someone* must decide the issue.

Setser's response is that, read in context, the sentence speaks only to district courts. Under the circumstances at issue here, he says, the federal and state sentences still might run either concurrently or consecutively, but just not at the discretion of the District Court. That is an odd parsing of the text, which makes no distinction between the district court and the Bureau of Prisons. The placement of §3584 does indeed suggest that it is directed at district courts—but that is likely because Congress contemplated that only district courts would have the authority to make the concurrent-vs.-consecutive decision, not because Congress meant to leave the Bureau unfettered. Indeed, the Bureau already follows the other directives in §3584(a). See Brief for United States 35. For example, if the district court imposes multiple terms of imprisonment at the same time, but fails to address the concurrent-vs.-consecutive issue, the terms "run concurrently," §3584(a), and the Bureau is not free to use its "place of imprisonment" authority to achieve a different result.[3]

The Latin maxim on which Setser relies—*expressio*

_____

[3] The Government contends that the Bureau applies the default rules in §3584(a) "[a]s a matter of discretion" but is not "'bound'" by that subsection. Reply Brief for United States 15, n. 5. We think it implausible that the effectiveness of those rules—of §3584(a)'s prescription, for example, that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"—depends upon the "discretion" of the Bureau.

*unius est exclusio alterius*—might have application here if
the provision in question were a conferral of authority on
district courts. Giving sentencing authority in only speci-
fied circumstances could be said to imply that it is with-
held in other circumstances. Section 3584, however, is
framed not as a conferral of authority but as a limitation
of authority that already exists (and a specification of
what will be assumed when the exercise of that authority
is ambiguous). It reads *not* "District courts shall have
authority to impose multiple terms of imprisonment on a
defendant at the same time, etc." but rather "*If* multiple
terms of imprisonment are imposed on a defendant at
the same time, [etc.]"—quite clearly assuming that such au-
thority already exists. The mere acknowledgment of the
existence of certain pre-existing authority (and regulation
of that authority) in no way implies a repeal of other pre-
existing authority. And that is especially true when there
is an obvious reason for selecting the instances of pre-
existing authority that are addressed—to wit, that they
are the examples of sentencing discretion most frequently
encountered.

Moreover, *expressio unius est exclusio alterius* is a
double-edged sword. Setser thinks it suggests that, because
§3584(a) recognizes judicial discretion in scenario *A* and
scenario *B*, there is no such discretion in scenario *C*. But
the same maxim shows much more convincingly why
§3621(b) cannot be read to give the Bureau of Prisons
exclusive authority to make the sort of decision committed
to the district court in §3584(a). When §3584(a) specific-
ally addresses decisions about concurrent and consecutive
sentences, and makes no mention of the Bureau's role in
the process, the implication is that no such role exists.
And that conclusion is reinforced by application of the
same maxim (properly, in this instance) to §3621(b)—
which *is* a conferral of authority on the Bureau of Prisons,
but does not confer authority to choose between concur-

rent and consecutive sentences. Put to the choice, we believe it is much more natural to read §3584(a) as not containing an implied "only," leaving room for the exercise of judicial discretion in the situations not covered, than it is to read §3621(b) as giving the Bureau of Prisons what amounts to sentencing authority.

## III

None of the other objections to this approach raised by Setser and the Government require a different result.

Our decision today follows the interpretive rule they invoke, that we must "give effect . . . to every clause and word" of the Act. *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955) (internal quotation marks omitted). The first sentence in §3584(a) addresses the most common situations in which the decision between concurrent and consecutive sentences must be made: where two sentences are imposed at the same time, and where a sentence is imposed subsequent to a prior sentence that has not yet been fully served. It says that the district court has discretion whether to make the sentences concurrent or consecutive, *except that* it may not make consecutive a sentence for "an attempt" and a sentence for an "offense that was the sole objective of the attempt." And the last two sentences of §3584(a) say what will be assumed in those two common situations if the court does not specify that the sentence is concurrent or consecutive. Giving those dispositions full effect does not demand that we regard them as eliminating sentencing discretion in other situations.

Setser and the Government both suggest that, because §3584(b) directs courts to consider the sentencing factors in §3553(a) in making these decisions, and because some of those factors will be difficult to apply with respect to anticipated sentences, the Act cannot be read to allow judicial discretion in these circumstances. One cannot be

sure that the sentence imposed is "sufficient, but not greater than necessary," §3553(a), the argument goes, if one does not know how long it will actually be. But the district judge faces the same uncertainty if the concurrent-vs.-consecutive decision is left for later resolution by the Bureau of Prisons; he does not know, for example, whether the 5-year sentence he imposes will be an actual five years or will be simply swallowed within another sentence. To be sure, the Bureau of Prisons, if it waits to decide the matter until after the state court has imposed its sentence, will know for sure what sentences it is dealing with. But the Bureau is not charged with applying §3553(a). The factors that guide the agency's "place of imprisonment" decision do include "the nature and circumstances of the offense" and "the history and characteristics of the prisoner," §3621(b)(2), (b)(3) (2006 ed.)—factors that are, to be sure, relevant to sentencing but also relevant to selection of the place of confinement; but they also include factors that make little, if any, sense in the sentencing context, such as "the resources of the facility contemplated" and whether the state facility "meets minimum standards of health and habitability," §3621(b), (b)(1). (These factors confirm our view that §3621 is not a sentencing provision but a place-of-confinement provision.) It is much more natural for a judge to apply the §3553(a) factors in making all concurrent-vs.-consecutive decisions, than it is for some such decisions to be made by a judge applying §3553(a) factors and others by the Bureau of Prisons applying §3621(b) factors.

The final objection is that principles of federalism and good policy do not allow a district court to make the concurrent-vs.-consecutive decision when it does not have before it all of the information about the anticipated state sentence. As for principles of federalism, it seems to us they cut in precisely the opposite direction. In our American system of dual sovereignty, each sovereign—whether

the Federal Government or a State—is responsible for "the administration of [its own] criminal justice syste[m]." *Ice*, 555 U. S., at 170. If a prisoner like Setser starts in state custody, serves his state sentence, and then moves to federal custody, it will always be the Federal Government—whether the district court or the Bureau of Prisons—that decides whether he will receive credit for the time served in state custody. And if he serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or the Bureau said on the matter. Given this framework, it is always more respectful of the State's sovereignty for the district court to make its decision up front rather than for the Bureau of Prisons to make the decision *after* the state court has acted. That way, the state court has all of the information before it when it acts.[4] The Government's position does not promote the States' interest—just the interests of the Bureau of Prisons.

As for good policy: The basic claim of Setser, the Government, and the dissent is that when it comes to sentencing, later is always better because the decisionmaker has more information. See, *e.g., post,* at 7 ("[A] sentencing judge typically needs detailed information when constructing a multiple-count or multiple-conviction Guideline sentence"). That is undoubtedly true, but when that desideratum is applied to the statutory structure before us

―――――――

[4] Setser notes that the text of §3584(a) does not distinguish between state and federal sentences. If a district court can enter a consecutive sentencing order in advance of an anticipated state sentence, he asks, what is to stop it from issuing such an order in advance of an anticipated federal sentence? It could be argued that §3584(a) impliedly prohibits such an order because it gives that decision to the federal court that sentences the defendant when the other sentence is "already" imposed—and does not speak (of course) to what a *state* court must do when a sentence has already been imposed. It suffices to say, however, that this question is not before us.

here it is overwhelmed by text, by our tradition of judicial sentencing,[5] and by the accompanying desideratum that sentencing not be left to employees of the same Department of Justice that conducts the prosecution.[6]  Moreover, when the district court's failure to "anticipat[e] developments that take place after the first sentencing," Brief for United States 29, produces unfairness to the defendant, the Act provides a mechanism for relief.  Section 3582(c)(1)(A) provides that a district court,

> "upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment . . . after con-

—————

[5] To support its view that Congress authorized the Bureau to make concurrent-vs.-consecutive decisions, the dissent relies on the fact that the Executive long had what is effectively sentencing authority in its ability to grant or deny parole.  That is a particularly curious power for the dissent to rely upon, inasmuch as most of the dissent discusses (in great detail) the Sentencing Reform Act, *whose principal objective was to eliminate the Executive's parole power*.  Curiouser still is the dissent's invocation of the Guidelines system, which "tell[s] the sentencing judge how, through the use of partially concurrent and partially consecutive sentences, to build a total sentence that meets the Guidelines' requirements." *Post*, at 4.  These "instructions," *ibid.*, do not cover yet-to-be-imposed sentences, the dissent says, because "the sentencing judge normally does not yet know enough about the behavior that underlies (or will underlie)" such a sentence.  *Post,* at 5.  That explains, perhaps, why the Guidelines' "instructions" to judges do not cover them.  But why do not the Guidelines "instruct" the Bureau of Prisons how to conduct its concurrent/consecutive sentencing?  If the reason is (as we suspect) that the Sentencing Commission does not have, or does not believe it has, authority to "instruct" the Bureau of Prisons, the dissent's entire argument based upon what it calls "the purposes and the mechanics of the SRA's sentencing system," *post,* at 6, falls apart.  Yet-to-be-imposed sentences are not within the system at all, and we are simply left with the question whether judges or the Bureau of Prisons is responsible for them.  For the reasons we have given, we think it is judges.

[6] Of course, a district court should exercise the power to impose anticipatory consecutive (or concurrent) sentences intelligently.  In some situations, a district court may have inadequate information and may forbear, but in other situations, that will not be the case.

sidering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction [or that the defendant meets other criteria for relief]."

## IV

Setser argues that, even if the District Court's consecutive order was consistent with §3584(a), it made his sentence impossible to implement and therefore unreasonable under the Act, see *United States* v. *Booker*, 543 U. S. 220, 261–262 (2005),[7] in light of the State's decision to make his sentences concurrent. We think not. There is nothing unreasonable—let alone inherently impossible—about the sentence itself. Setser is ordered to serve a 151-month term in federal custody, and that sentence should run concurrently with one state sentence and consecutively with another.

The difficulty arises not from the sentence, but from the state court's decision to make both state sentences concurrent. Which of the District Court's dispositions should prevail: that his federal sentence run consecutively to the state sentence on the parole revocation charge, or that his federal sentence run concurrently with the state sentence on the new drug charge? If the federal sentence is added to the state sentence it will not be concurrent with the new drug charge, and if it is merged in the state sentence it will not be consecutive to the parole revocation charge.

---

[7] We have never had occasion to decide whether reasonableness review under *Booker* applies to a court's decision that a federal sentence should run concurrently with or consecutively to another sentence. The Courts of Appeals, however, generally seem to agree that such review applies. See, *e.g., United States* v. *Padilla*, 618 F. 3d 643, 647 (CA7 2010) *(per curiam); United States* v. *Matera*, 489 F. 3d 115, 123–124 (CA2 2007). For purpose of the present case we assume, without deciding, that it does.

This is indeed a problem, but not, we think, one that shows the District Court's sentence to be unlawful. The reasonableness standard we apply in reviewing federal sentences asks whether the district court abused its discretion. See *Gall* v. *United States*, 552 U. S. 38, 46 (2007). Setser identifies no flaw in the District Court's decisionmaking process, nor anything available at the time of sentencing that the District Court failed to consider. That a sentence is thwarted does not mean that it was unreasonable. If a district court ordered, as a term of supervised release, that a defendant maintain a steady job, but a subsequent disability rendered gainful employment infeasible, we doubt that one would call the original sentence an abuse of discretion. There will often be late-onset facts that materially alter a prisoner's position and that make it difficult, or even impossible, to implement his sentence.

This is where the Bureau of Prisons comes in—which ultimately has to determine how long the District Court's sentence authorizes it to continue Setser's confinement. Setser is free to urge the Bureau to credit his time served in state court based on the District Court's judgment that the federal sentence run concurrently with the state sentence for the new drug charges. If the Bureau initially declines to do so, he may raise his claim through the Bureau's Administrative Remedy Program. See 28 CFR §542.10 *et seq.* (2011). And if that does not work, he may seek a writ of habeas corpus. See 28 U. S. C. §2241. We express no view on whether those proceedings would be successful.

*      *      *

Because it was within the District Court's discretion to order that Setser's sentence run consecutively to his anticipated state sentence in the probation revocation proceeding; and because the state court's subsequent decision to

make that sentence concurrent with its other sentence does not establish that the District Court abused its discretion by imposing an unreasonable sentence; we affirm the judgment of the Court of Appeals.

*It is so ordered.*

APPENDIXES
A

18 U. S. C. §3584

**"Multiple sentences of imprisonmen**t

"(a) IMPOSITION OF CONCURRENT OR CONSECUTIVE TERMS.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

"(b) FACTORS TO BE CONSIDERED IN IMPOSING CONCURRENT OR CONSECUTIVE TERMS.—The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

"(c) TREATMENT OF MULTIPLE SENTENCE AS AN AGGREGATE.—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."

B

18 U. S. C. §3621(b) (2006 ed. and Supp. IV)

"PLACE OF IMPRISONMENT.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

"(1) the resources of the facility contemplated;

"(2) the nature and circumstances of the offense;

"(3) the history and characteristics of the prisoner;

"(4) any statement by the court that imposed the sentence—

"(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

"(B) recommending a type of penal or correctional facility as appropriate; and

"(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

"In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted

Appendix B to opinion of the Court

person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–7387

———————

## MONROE ACE SETSER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[March 28, 2012]

JUSTICE BREYER, with whom JUSTICE KENNEDY and
JUSTICE GINSBURG join, dissenting.

The Sentencing Reform Act of 1984 seeks to reform
federal sentencing practices by creating a federal Sentenc-
ing Commission instructed to develop and to promulgate
federal Sentencing Guidelines. The provision of the Act
here at issue concerns "multiple sentences." See 18
U. S. C. §3584. It brings into focus a difficult Guidelines-
related problem: How should a federal judge sentence an
offender where the offender has been convicted of having
violated several different statutes? The convictions may
have taken place all at the same time. Or, some convic-
tions might have taken place at an earlier time, the of-
fender may already have been sentenced to prison, and
indeed the offender may still be serving that sentence.
The federal judge must decide the extent to which a sen-
tence attached to one conviction should be served concur-
rently or consecutively with sentences attached to other
convictions.

An understanding of the nature of this general problem
and the Sentencing Commission's statutorily foreseen
solutions will help the reader understand why, in my view,
the better legal answer to the question before us is that a
federal sentencing judge does *not* have the power to order
that a "federal sentence be consecutive to an anticipated

state sentence that has not yet been imposed." *Ante,* at 1.

## I

The Sentencing Reform Act (SRA) has two overall objectives. See *Barber* v. *Thomas*, 560 U. S. __, __ (2010) (slip op., at 7); see also United States Sentencing Commission, Guidelines Manual §1A3, p. 1.2 (Nov. 1987) (USSG) (addressing statutory objectives). First, it seeks greater honesty in sentencing. Instead of a parole commission and a judge trying to second-guess each other about the time an offender will actually serve in prison, the SRA tries to create a sentencing system that will require the offender actually to serve most of the sentence the judge imposes. See *Mistretta* v. *United States*, 488 U. S. 361, 367 (1989) ("[The SRA] makes all sentences basically determinate"). Second, the Act seeks greater fairness in sentencing through the creation of Guidelines that will increase the likelihood that two offenders who engage in roughly similar criminal behavior will receive roughly similar sentences. See *Barber*, *supra,* at ___ (slip op., at 7) (noting that Congress sought to achieve, in part, "increased sentencing uniformity").

To implement these reforms, the SRA instructs the Commission to write Guidelines that inevitably move in the direction of increased "real offense" sentencing. See USSG §1A2, p. 1.1. (describing how statute, *e.g.,* by insisting upon categories of offense behavior and offender characteristics, leads to this result). In principle, real offense sentencing would impose the same sentence upon different offenders who engage in the same real conduct *irrespective of the statutes under which they are charged.* Real offense sentencing, for example, would mean that two individuals, both of whom rob a bank and injure a teller, would receive the same sentence even if the Government charges one of them under a bank robbery statute and the other under an assault statute. See, *e.g.,* USSG App. A (listing federal

statutory offenses, while keying them to specific individual Guidelines that determine sentence based upon likely actual *behavior*). In the event, the Guidelines move the sentencing system in this direction while simultaneously recognizing that other factors require considerable modification of the real offense principle. See USSG §1A4(a) ("real offense vs. charge offense sentencing").

Nonetheless the "real offense" goal influenced the Act's, and the Commission's, objectives in respect to the sentencing of an offender with multiple convictions. Insofar as several convictions arise out of the same course of behavior, the sentencing judge should treat the crimes underlying the convictions as if they were all part of a single crime and sentence accordingly. But, insofar as the crimes underlying the convictions arise out of different courses of behavior, the sentencing judge should treat the crimes underlying the convictions as if they were not part of a single crime and should see that the ultimate sentence reflects that fact.

To achieve these objectives is easier said than done. For one thing, it requires a definition of what counts as the same course of behavior. The Guidelines set forth that definition in §1B1.3, p. 1.17 ("Relevant Conduct"). For another thing, statutes and Guidelines that set forth related instructions must take into account the fact that sentencing-related circumstances can prove highly complex. To take a fairly simple example, suppose that a defendant is convicted of both robbery and impersonating a federal official, that he has engaged in a single course of behavior, but that neither the robbery nor the impersonation Guidelines take account of the other. Instructions about concurrent/consecutive sentences must give the judge an idea about what to do in such a case. They must also take account of the fact that a maximum penalty contained in a statute will trump a greater penalty contained in a Guideline. And they must tell the judge (faced

with multiple convictions) what to do where that is so.

Reflecting these, and other, complexities, the Guidelines contain complex instructions about how to sentence where the offender is convicted of "Multiple Counts," see USSG §3D, or has previously been convicted of a crime for which he is "subject to an Un-discharged Term of Imprisonment," see §5G1.3. The Guidelines also tell the sentencing judge how, through the use of partially concurrent and partially consecutive sentences, to build a total sentence that meets the Guidelines' requirements. See §§5G1.2(d), 5G1.3.

With this background it becomes easier to understand the statutory provisions before us. They reflect the fact that Congress expected sentencing judges, when faced with a defendant convicted of multiple crimes, to construct a sentence that would, at least to a degree, reflect the defendant's real underlying behavior. Where two convictions reflect in whole or in part the same behavior, the overall sentences should reflect that fact, say by running concurrently.

Accordingly, the statute says that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." 18 U. S. C. §3584(a). And that statement reflects the fact that often (but not always) multiple convictions after a single trial will reflect a single course of behavior (different aspects of which violate different criminal statutes). The statute also says that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Ibid.* This statement reflects the fact that several convictions imposed after different trials are more likely to reflect unrelated behaviors. In the first instance that the statute addresses, concurrent sentences are more likely to be appropriate; in the second, consecutive sentences are more likely to be appropriate. But that is not always so. Thus the statu-

tory provisions assure sentencing judges that they retain the power to reach a different conclusion.

At this point, I would ask the question that this case poses. Why does the statute say nothing about a sentencing judge imposing a sentence that might run consecutively with a sentence that a (typically different) judge *has not yet imposed*? The answer is this: Because the sentencing judge normally does not yet know enough about the behavior that underlies (or will underlie) a sentence that has not yet been imposed. Normally the sentencing judge does not know, for example, (a) what that sentence will be, (b) whether the behavior underlying that later sentence constitutes part of the same course of behavior that underlies the present sentence or, instead, is totally separate from the behavior underlying the present sentence, or (c) is partly the same and partly different. Even if the judge has an idea about what will happen, he does not know *precisely* what will happen; and precision in this matter is important.

In a word, the sentencing judge normally does not yet know enough about what will happen in the sentencing-proceeding-yet-to-come to be able to construct a sentence that meets the Guidelines' instructions and which, in doing so, helps to assure that different individuals who engage in the same criminal behavior will typically receive roughly comparable sentences.

Of course, the Court is correct when it says that eventually the sentences will run (either wholly in or in part) concurrently or consecutively. And *someone* must decide how they will run. *Ante,* at 2–3. But the Court is not correct when it says that this someone should be the first federal sentencing judge. Rather, the Executive and Judicial Branches have devised a system that can draw upon the intentions of that first federal judge, while applying them in light of actual knowledge about what later happened. The Bureau of Prisons (BOP) in effect makes

the consecutive/concurrent decision after considering, among other things, "any statement by the court that imposed the sentence," including statements "concerning the purposes for which the sentence to imprisonment was determined to be warranted." 18 U. S. C. §3621(b)(4)(A). And its program statement provides that it will review the "intent of the federal sentencing court" when deciding whether in effect to make an earlier federal, and later state, sentence concurrent or consecutive. Dept. of Justice, BOP, Program Statement 5160.05: Designation of State Institution for Service of Federal Sentence 4 (Jan. 16, 2003). The Bureau exercises this authority by designating (or refusing to designate) the state prison where an offender is or will be incarcerated pursuant to his state sentence as the place where he will serve his federal sentence. 18 U. S. C. §3621(b).

This exercise of authority by the Executive Branch is not constitutionally surprising. After all, "federal sentencing" has "never . . . been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." *Mistretta*, 488 U. S., at 364. And, until fairly recently the federal BOP decided (via parole) the far more global question of just how long (within broad limits) each imprisoned offender would serve. See *id.*, at 367. Thus, the present Bureau involvement represents a further practical accommodation to a fact about the world, namely that the initial sentencing judge typically lacks important sentencing-related information about a second sentence that has not yet been imposed.

## II

Given the purposes and the mechanics of the SRA's sentencing system, just described, the better reading of the "multiple sentences" provision is a reading that denies a sentencing judge the authority to "order that the federal

sentence be consecutive to an anticipated state sentence that has not yet been imposed." *Ante,* at 1. For one thing, nothing in the statute explicitly grants the judge that authority. The text refers to *other* circumstances, those that involve earlier or contemporaneous (multiple-count) convictions, while it does not refer to later imposed sentences.

For another, exercise of any such authority would more likely hinder than advance the basic objectives of the SRA. As I have explained, *supra,* at 2–5, a sentencing judge typically needs detailed information when constructing a multiple-count or multiple-conviction Guideline sentence. The fact that the future sentence has not yet been imposed means that information will often be lacking, and that in turn means that the exercise of such authority would risk confusion and error. A sentencing judge who believes, for example, that the future conviction will be based upon different relevant conduct (and consequently orders a consecutive sentence) could discover that the second conviction rests upon the same relevant conduct (warranting a concurrent sentence). Mistakes of this kind increase the risk of sentencing disparity and, insofar as the first judge guesses wrong, they can mean a less honest sentencing process as well.

Further, I can find no significant tradition (pre-Guideline or post-Guideline) of federal judges imposing a sentence that runs consecutively with a sentence not yet imposed. The Court refers to four Courts of Appeals cases for the proposition that "traditionally" a judge possessed this authority. *Ante,* at 4. The opinions in three of the cases are each about a page long and do not discuss the matter here at issue. (They assume, without significant discussion, the existence of the relevant sentencing authority.) See *Anderson* v. *United States*, 405 F. 2d 492, 493 (CA10 1969) *(per curiam)* (addressing the question whether a federal sentence runs from the date of its impo-

sition or from the date of entry into federal custody); *United States* v. *Kanton*, 362 F. 2d 178, 179–180 (CA7 1966) *(per curiam)* (same); *United States ex rel. Lester* v. *Parker*, 404 F. 2d 40, 41 (CA3 1968) *(per curiam)* (addressing the question whether a sentence was insufficiently certain for purposes of due process). The fourth case, *Salley* v. *United States*, 786 F. 2d 546, 548 (CA2 1986)*,* discusses the issue directly and takes the Court's position. But, like the other three cases, it was decided before the Guidelines took effect (*i.e.,* when the reasons for denying the authority were less strong). And, one judge on the panel disagreed in a separate opinion, and in my view has the better of the argument. See *id.,* at 548–550 (Newman, J., concurring in result); see also *United States* v. *Eastman*, 758 F. 2d 1315, 1317 (CA9 1985) (holding that a judge lacks the here-relevant sentencing power). In any event, these instances are too few to constitute a "tradition."

In fact the Senate Committee Report accompanying the SRA provides strong evidence that there was no such tradition. S. Rep. No. 98–225 (1983). That Report thoroughly surveyed prior law. It says that the SRA is a "comprehensive statement of the Federal law of sentencing," that it "describes in detail the kinds of sentences that may be imposed," and that §3584 "provides the rules for determining the length of a term of imprisonment for a person convicted of more than one offense." *Id.,* at 50, 125–126. It further states that "[e]xisting law permits the imposition of either concurrent or consecutive sentences," *which practice it then describes as limited to two scenarios:* "[t]erms of imprisonment imposed at the same time," and those "imposed on a person already serving a prison term." *Id.,* at 126. It says the same when describing how §3584 is supposed to work. In neither place does it refer to a practice of, or any authority for, imposing a prison term that runs consecutively with a future term *not yet imposed.*

In addition, a grant of such authority risks at least

occasional incoherence. For example, the statute, after setting forth the court's authority to impose a sentence of imprisonment that runs either concurrently or consecutively with other terms *imposed in the same or in earlier proceedings*, creates an exception that says: "except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt." 18 U. S. C. §3584(a). Now suppose the Court were right, and a sentencing judge had the authority to run a present term consecutively with a not-yet-imposed future term. Would it not be important to apply this same "attempt" exception in such instances as well? Indeed, the exception is phrased in categorical terms, and the legislative history in no way indicates that the exception applies only occasionally. See S. Rep. No. 98–225, at 126 ("[C]onsecutive terms of imprisonment *may not*, contrary to current law, be imposed for [attempt] and for an offense that was the sole objective of the attempt" (emphasis added)). Yet it is difficult, if not impossible, to read the statute's language as broadening the exception beyond the statutorily listed scenarios.

Or, consider, for example, an offender tried for arguably related crimes in two different federal courts at two different times. The Court's reading would not only allow the second judge to order concurrent service with the first sentence if warranted, as the statute explicitly permits, but it would also allow the first judge to make an analogous but anticipatory order based upon the sentence he expected the second judge would impose. But where complex forms of criminal behavior are at issue, these different judges may reach different conclusions. The result may well be conflict and confusion.

Finally, as I said above, *supra,* at 5–6, a more practical solution to potential problems presented by a future sentencing proceeding lies closer at hand. The BOP has the statutory authority to effect concurrent service of federal

and state sentences and is well situated to take into account both the intent of the first sentencing judge and the specific facts developed in the second sentencing. The relevant statute provides that "[t]he Bureau may designate any available penal or correctional facility . . . , whether maintained by the Federal Government or otherwise . . . ." 18 U. S. C. §3621(b). And in reliance on this authority, the Bureau has concluded that it has the power to "designat[e] . . . a state institution for concurrent service of a federal sentence." Program Statement 5160.05, at 1. The Program Statement further provides that exercise of this power will be guided by, in part, "the intent of the federal sentencing court" in addition to "any other pertinent information regarding the inmate." *Id.,* at 4.

The Court's only criticism of this system is that it is less "natural" to read the statute "as giving the Bureau of Prisons what amounts to sentencing authority." *Ante,* at 8. But what is unnatural about giving the Bureau that authority? The sentencing process has long involved cooperation among the three branches of Government. *Mistretta*, 488 U. S., at 364. And until the Guidelines the BOP itself decided, within broad limits, precisely how much prison time every typical offender would serve. Even today, it still decides that question within certain limits. 18 U. S. C. §3624 (2006 ed. and Supp. IV) (delegating to the BOP authority to calculate "good time credit," which in effect reduces a prisoner's term of incarceration); see also *Barber*, 560 U. S., at __ (slip op., at 1). Although Congress limited the Bureau's authority in this respect, there is nothing unnatural about leaving the Bureau with a small portion of that authority—particularly where doing so helps significantly to alleviate a small, but important, technical problem in the application of the SRA's sentencing system.

\*     \*     \*

Because the Court does not ask *why* the "multiple sentencing" provision leaves out the authority at issue—concerning the not-yet-imposed sentence—it reaches what I believe is the wrong result. Consequently, with respect, I dissent.