NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2019
Decided June 19, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2763

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 1:17-CR-00371(2) |
| RASHAD ANCHANDO, *Defendant-Appellant*. | John J. Tharp, Jr., *Judge*. |

**O R D E R**

After crashing a stolen Jeep into the storefront of a firearms retailer, Rashad Anchando and his co-defendants stole 20 guns. Anchando pleaded guilty to stealing firearms from a federally licensed gun dealer, 18 U.S.C. § 922(u), and the district court sentenced him to 60 months' incarceration, consecutive to a sentence that he is serving for an unrelated state conviction. On appeal, Anchando argues that his consecutive, above-Guidelines sentence is unreasonable. Because the district court did not abuse its discretion, we affirm the sentence.

## Background

After Anchando and his co-defendants stole a Jeep from the parking lot of a gun store in Spring Valley, Illinois, they discovered that it contained 700 to 800 rounds of ammunition. They then decided to rob South Post Guns, a federally licensed firearms business in Streator, Illinois. A co-conspirator drove the stolen Jeep through the storefront, and Anchando and others then entered the store, broke glass casings, and stole 20 firearms. Later, the group recorded a video of themselves pointing the stolen weapons, with the tags still attached, at the camera; the video was posted on Facebook. The group then divided the firearms among themselves. Anchando admits that he believed that his accomplices would bring the guns to Chicago and distribute them to persons who did not intend to use or dispose of them lawfully.

Two weeks later, Streator police officers arrested Anchando for the delivery of heroin and possession of a stolen firearm. While in detention, he also was charged with battery against a fellow inmate. He pleaded guilty to all three charges in Illinois state court and was sentenced to six years' imprisonment.

While Anchando was incarcerated, a federal grand jury indicted him on three charges in connection with the gun-store robbery: conspiring to steal from a federally licensed gun dealer, 18 U.S.C. § 371, stealing from a federally licensed gun dealer, *id.* § 922(u), and possessing stolen firearms, *id.* § 922(j). Anchando entered into a written plea agreement and pleaded guilty to the second count.

At the sentencing hearing, the court calculated a Guidelines range of 41 to 51 months' imprisonment. The government requested a sentence of 51 months, beginning after his state sentence. Anchando argued that the sentence should not be consecutive because he had not committed the federal offense while serving his state sentence. *See* U.S.S.G. § 5G1.3(a). The district court determined, however, that it had discretion to impose the sentence wholly concurrent with, partially concurrent with, or consecutive to Anchando's state sentence.

Ultimately, the court sentenced Anchando to a fully consecutive 60 months in prison. In reaching its conclusion, the court discussed each of the factors in 18 U.S.C. § 3553(a). Among these factors, the court assessed the nature and circumstances surrounding the offense, including the fact that Anchando and his co-defendants posted a video bragging about the crime and advertising the guns for distribution, "in effect volunteering to throw gas on the fire that is the problem of gun violence in [Chicago]."

The court also emphasized the seriousness of the offense, the need to protect the public from similar crimes, and the objective of general deterrence "to make absolutely clear that this is conduct [that society] won't tolerate."

Anchando appealed. His attorney, however, filed a motion to withdraw and an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). We twice found the brief procedurally deficient. After counsel filed the brief a third time, we struck the brief because he had not ordered a transcript of the change-of-plea hearing and had not discussed in the brief whether he had complied with his obligations under *United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012), and *United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). These cases require counsel to advise his client about the risks and benefits of trying to withdraw the guilty plea and specifically to confirm whether his client wishes to do so. *See Konczak*, 683 F.3d at 349. We directed counsel to order the hearing transcript and, after following the procedures in *Konczak* and *Knox*, to file either a compliant *Anders* brief or a merits brief. Counsel ultimately filed a brief discussing the merits.

**Analysis**

Anchando first questions whether the district court erred in sentencing him above the Guidelines range and in relying on the need for general deterrence and the fact of increased gun violence in Chicago to do so. We review the substantive reasonableness of a sentence for an abuse of discretion—regardless whether that sentence is inside or outside the Guidelines range—and will uphold an above-Guidelines sentence so long as the district court applied the factors in 18 U.S.C. § 3553(a) and adequately explained why the penalty is appropriate. *United States v. Hill*, 645 F.3d 900, 911 (7th Cir. 2011).

Here, the transcript of the sentencing hearing precludes any conclusion of error. As the government notes, Anchando acknowledges that the court provided a "step by step methodical analysis" of its reasoning, pointed to specific reasons why Anchando's crime was particularly egregious, and thoroughly analyzed the factors in § 3553(a). Further, the law requires sentencing courts to reckon with deterrence, *see* 18 U.S.C. § 3553(a)(2)(B), so the court did not abuse its discretion in considering deterrence with other factors. *See United States v. Sunmola*, 887 F.3d 830, 841–42 (7th Cir. 2018). As for the mention of gun violence in Chicago, courts may contemplate community-based factors; indeed, "the need … to protect the public" is another required consideration. 18 U.S.C. § 3553(a)(2)(C); *accord United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018). The district

court did not abuse its discretion in weighing, among all other factors, the specific impact of Anchando's conduct on the community.

Anchando also questions whether the district court erred in ordering his sentence to be served consecutive to his undischarged state sentence. "Multiple terms of imprisonment imposed at different times run consecutively," though courts have discretion to order otherwise. 18 U.S.C. § 3584(a); *see also Setser v. United States*, 566 U.S. 231, 236 (2012). In deciding whether to impose a consecutive or concurrent sentence, the district court must consider the factors in § 3553(a). 18 U.S.C. § 3584(b). (The Sentencing Guidelines do not provide guidance on this question because Anchando's federal offense did not involve conduct related to his state offense. *See* U.S.S.G. § 5G1.3(d).) Because the district court conducted a reasoned and exhaustive analysis of the § 3553(a) factors, its decision to impose a consecutive sentence was not an abuse of its discretion. *See United States v. Padilla*, 618 F.3d 643, 647 (7th Cir. 2010).

AFFIRMED