Opinion by Judge REINHARDT; Partial Concurrence and Partial Dissent by Judge CALLAHAN.
OPINION
REINHARDT, Circuit Judge:
Daniel Zavala seeks credit toward his criminal sentence under 18 U.S.C. § 3585(b), the sentencing credit statute, for two periods of time during which he *369 was detained by the U.S. Immigration and Customs Enforcement Service (ICE) prior to the commencement of his criminal sentence for illegal reentry under 8 U.S.C. § 1326. We hold that where ICE. detains an alien pending potential criminal prosecution, that detention constitutes “official detention” within the meaning of § 3585(b) and the alien is accordingly entitled to credit toward his criminal' sentence.
I.
On September 20, 2010, Zavala was transferred from state custody, where he had finished serving a state criminal sentence, into the custody of ICE. That same day, an ICE officer gave him a Form I-871, U.S. Department of Homeland Security Notice of Intent/Decision to Reinstate Prior Order, which Zavala signed.[1] The I-871 Form provided that ICE had determined that Zavala was subject to a prior order of removal entered on May 2, 2006, that he had previously been removed on May 3, 2006 pursuant to an order of removal, and that he illegally reentered the United States on or about July 14, 2009. Zavala signed the “Acknowledgment and Response” section of the 1-871 Form stating “I do not wish to make a statement contesting this determination.”[2] The ICE officer accordingly reinstated the prior order of removal by signing the “Decision, Order, and Officer’s Certification” section of Form 1-871, which stated that “[hjaving reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the pri- or order, in accordance with section 241(a)(5) of the [Immigration and Nationality] Act.” Although reinstatement of the prior order allowed ICE to remove Zavala from the country at any time from September 20, 2010 onward, ICE nonetheless continued to detain Zavala until October 6, 2010 — sixteen days later.
On October 6, 2010, a grand jury in the District of Nevada returned an indictment charging Zavala with illegal reentry under § 1326. ICE then transferred Zavala into the custody of the United States Marshals Service (USMS), and Zavala was in USMS custody as of October 7, 2010. Sixty-two days later, on December 7, 2010, the United States District Court for the District of Nevada granted the Government leave to dismiss the unlawful reentry charge due to improper venue.
On December 10, 2010, following dismissal of the indictment for improper venue, Zavala was transferred from USMS custody back into ICE custody. Twelve days later, on December 22, 2010, a criminal action for illegal reentry under § 1326 was again brought against Zavala, this time in the Central District of California, the proper venue, and he was again transferred into USMS custody from ICE custody.
Pursuant to a plea agreement, Zavala was sentenced on March 28, 2011 to 46-months’ imprisonment and 3-years’ supervised release for illegal reentry under § 1326(a). In calculating Zavala’s entitlement to sentencing credit under § 3585(b) *370 for time he spent in detention prior to the commencement of his criminal sentence, the Bureau of Prisons (BOP) granted Zavala credit for the two periods of time during which USMS detained him — October 6, 2010 through December 10, 2010, and December 22, 2010 through March 27, 2011.[3]
BOP denied Zavala sentencing credit, however, for the two periods of time during which ICE detained him prior to the commencement of his criminal sentence: (1) September 20, 2010 through October 5, 2010, when ICE detained him after reinstatement of the removal order but before an indictment was returned, hereinafter referred to as the “pre-indictment period”; and (2) December 11, 2010 through December 21, 2010, when ICE detained him between the dismissal of the first indictment for improper venue and the re-initiation of the criminal proceeding in the proper venue, hereinafter referred to as the “post-indictment period.”
On May 20, 2013, Zavala filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming improper denial of sentencing credit because he had “been in official custody of the federal government since September 20, 2010.” A magistrate denied sentencing credit for both periods of detention by ICE, and the district court adopted in full the magistrate’s report and recommendation. Zavala appealed.
II.
Zavala contends that the district court erred in concluding that detention by immigration authorities never constitutes “official detention” within the meaning of § 3585(b), the statute governing the calculation of a term of imprisonment. We review the district court’s denial of a habeas petition de novo, while we review any underlying factual findings for clear error. Reynolds v. Thomas, 603 F.3d 1144, 1148 (9th Cir.2010), abrogated on other grounds by Setser v. United States, — U.S.-, 132 S.Ct. 1463, 182 L.Ed.2d 455 (2012). We review questions of statutory interpretation de novo. United States v. Thompson, 728 F.3d 1011, 1015 (9th Cir.2013); Phoenix Mem’l Hosp. v. Sebelius, 622 F.3d 1219,1224 (9th Cir.2010).
A.
Title 18 U.S.C. § 3585 governs'the calculation of the length of a federal criminal sentence. Under the statute, a term of imprisonment begins “on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.” § 3585(a). The statute then provides that the defendant is entitled to sentencing credit for time spent in “official detention” prior to the commencement of the term of imprisonment:
Credit for prior custody. — A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
(1) as a result of the offense for which the sentence was imposed; or
(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
*371 that has not been credited against another sentence.
§ 3585(b). The statute does not define “official detention.”
When interpreting a statute, “[w]e start, as always, with the language of the statute.” Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). In so doing, “[w]e give the words of a statute their ‘ordinary, contemporary, common meaning,’ absent an indication Congress intended them to bear some different import.” Id. Under the plain text of the sentencing credit statute, when ICE detains an alien for the purpose of securing his presence at a potential criminal prosecution and the alien is indeed criminally prosecuted and sentenced, this period of detention by ICE is “as a result of the offense for which the sentence was imposed.” § 3585(b)(1). The “as a result of’ formulation denotes a causal relationship. When ICE detains an alien pending a potential criminal prosecution, electing to defer deportation until the conclusion of such criminal proceedings (and often until after service of the criminal sentence), that period of ICE detention is causally attributable to the criminal offense rather than to ICE’s authority to detain an alien pending deportation. Under the plain meaning of the words, detention is the holding of aliens in custody (which the immigration statutes expressly describe as “detention”),[4] and ICE is' without question an official entity. Pending prosecution means the time during which the alien is detained for the purpose of securing his presence at a potential criminal prosecution, whereas pending deportation means detention for the purpose of removing him from the country.
The legislative history of § 3585 does not shed any additional light on whether ICE detention pending criminal prosecution constitutes “official detention,” but similarly it does not contain any indication that Congress intended the statute’s words to have a different import than their plain meaning.[5] Thus, we conclude that the relevant inquiry to determine whether a period of ICE detention constituted “official detention ... as a result of the offense for which the sentence was imposed” is whether the detainee was being held pending a potential criminal prosecution, rather than pending deportation in the ordinary course — that is, whether the alien’s detention status had changed from pending deportation, which it was at the time he was first detained, to pending prosecution.
A number of considerations support our interpretation of the statute as having the meaning its plain words afford it. First, issues of sentencing credit arise only in cases in which the alien has in fact been *372 criminally prosecuted and convicted, so the scope of our holding is necessarily circumscribed. In such cases, we always know that the government elected to pursue criminal prosecution, rather than to attempt to deport the alien forthwith. Otherwise, there would be no criminal sentence to credit. The only question is when the alien’s detention status changed from detention pending deportation to detention pending potential prosecution.
Second, federal immigration officers and federal prosecutors work together closely to facilitate criminal prosecutions of aliens. See 8 U.S.C. § 1226(d)(1) (requiring cooperation between the Attorney General and federal, state, and local authorities “with respect to the arrest, conviction, and release of any alien charged with an aggravated felony”); United States Customs and Border Protection Inspector’s Field Manual § 18.11 (2008) (providing detailed instructions to immigration officers regarding development of a case for criminal prosecution in cooperation with U.S. Attorneys); United States Immigration and Customs Enforcement Detention and Deportation Officer’s Field Manual § 14.8 (2006) (providing instructions on preserving a case for criminal prosecution after reinstatement of removal). It is typically ICE’s referral of a case to a U.S. Attorney that prompts the filing of charges for an immigration-status offense, and it is ICE’s delay of deportation and delivery of the alien to the U.S. Attorney that enables criminal proceedings to occur. Indeed, the record in this case is illustrative of the fact that prosecutions for immigration-status crimes are a collaborative effort by immigration officers and prosecutors: the only evidence supporting the criminal complaint against Zavala filed in the Central District of California was an affidavit by an ICE deportation officer.
Given that prosecutions for immigration-status crimes result from cooperative efforts between the two sets of officials, it would be arbitrary to afford sentencing credit when the government elects to hold a defendant in USMS detention while it builds its criminal case but not when the government elects to hold a defendant in ICE detention while it does so. Under the district court’s hardline rule that immigration detention never constitutes “official detention,” two identically , situated defendants would serve sentences of differing lengths based solely on the federal government’s election of ICE rather than USMS detention pending potential criminal prosecution. Individuals in immigration detention, unlike those in USMS detention, could be subjected to lengthy periods of detention with no offsetting sentencing credit. Further underscoring the arbitrariness of a blanket rule denying sentencing credit any time aliens are in ICE detention is the fact that BOP itself has afforded credit to aliens held in state detention pending federal prosecution, see § 3585(b)(2); U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5880.28, 1-14A, 1-21 (Feb. 14, 1997); Abpikar v. Lompoc Federal Bureau of Prisons, No. CV 12-00827 MMM, 2012 WL 3777156, at *2 (C.D.Cal. July 16, 2012), adopting report & recommendation, 2012 WL 3776499 (C.D.Cal. Aug. 30, 2012), and ICE detention often occurs in a state facility. See, e.g., Galan-Paredes v. Hogsten, No. 1:CV-06-1730, 2007 WL 30329, *1 (M.D.Pa. Jan. 3, 2007) (defendant held in county jail in ICE detention status). In other words, two individuals could receive different sentencing credit and thus serve different length sentences based solely on which agency was nominally in charge of their detention in the same facility.[6]
*373 B.
The Government makes four arguments in support of its contention that a defendant is never entitled to sentencing credit for time spent in ICE detention: (1) that Supreme Court precedent interpreting § 3585(b) in the context of pretrial release under the Bail Reform Act controls the instant case; (2) that BOP’s interpretation of § 3585(b) precludes sentencing credit for any and all time spent in immigration detention; (3) that sentencing credit is inappropriate because deportation proceedings are classified as civil; and (4) that requiring BOP to work with ICE to calculate sentences would be unworkable. We reject these arguments!
The Government argues that Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), controls the instant case, but Koray’s holding was far narrower. The question presented to the Court by the grant of certiorari was “whether a federal prisoner is entitled to credit against his sentence under § 3585(b) for time when he was ‘released’ on bail pursuant to the Bail Reform Act of 1984,” and the Court held that release on bail to a private community treatment center. did not constitute “official detention.” Id. at 54, 65, 115 S.Ct. 2021. Although the release on bail at issue in Koray included restrictive conditions, it was clear that under the terms of the Bail Reform Act the defendant was “released” from official detention to a private facility. Id. at 59, 115 S.Ct. 2021. In the instant case, it is equally clear that under the relevant statutes, detention by immigration officials constitutes “detention” and not “release.” See 8 U.S.C. §§ 1226(a)(l)-(2), 1231(a)(2).[7]
Despite dicta to the effect that official detention meant detention in a facility,under the control of BOP, see 515 U.S. at 58, 115 S.Ct. 2021, Koray had no occasion to address immigration detention, and it expressly declined to reach cases in which a defendant is held in detention in an official facility not operated or controlled by BOP. The Court expressly stated that “BOP often grants credit under § 3585(b) for time spent in state custody, even though the defendant was not subject to the control of BOP. These situations obviously are not governed by reference to a [Bail Reform Act] § 3142 ‘release’ or ‘detention’ order. ... [B]ecause the only question before us is whether a defendant is in ‘official detention’ under § 3585(b) during the time he is ‘released’ on bail pursuant to the Bail Reform, Act of 1981, we need not and do not rule here on the propriety of BOP’s decision to grant credit under § 3585(b) to a defendant who is denied bail pursuant to state law and held in the custody of state authorities.” 515 U.S. at 63 n. 5, 115 S.Ct. 2021 (citation omitted).[8] A fortiori, Koray *374 did not determine that immigration detention must be under the control of BOP in order to constitute “official detention”; rather, it left open the question we now answer: whether detention by immigration officials can constitute “official detention.” We conclude that it can and that in this case it does.[9]
Next, the Government argues that BOP’s Program Statement interpreting § 3585(b) precludes sentencing credit for all time spent in immigration custody, and that the Program Statement is entitled to deference. Congress delegated responsibility for the initial computation of sentences to the Attorney General, see United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), who has in turn delegated that authority to BOP. See 28 C.F.R. § 0.96. We need not, however, reach the question of administrative deference.[10] BOP’s Program State *375 ment does not speak to situations in which ICE detains an alien pending criminal prosecution — potential or otherwise. The Government’s claim that the Program Statement establishes a blanket no-credit rule is thus incorrect.
BOP Program Statement 5880.28 provides:
Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by INS pending a civil deportation determination is not being held in “official detention” pending criminal charges.
BOP Program Statement 5880.28 at 1-15A (emphasis added). By its text, the BOP Program Statement does not deny sentencing credit for any and all time an alien is held in immigration custody, as the Government contends. At best, it follows the same interpretation that we adopt: a line between detention pending deportation, for which a defendant is not entitled to sentencing credit, and detention pending criminal prosecution, including the filing of criminal charges, for which a defendant is entitled to sentencing credit.[11] At worst, the Program Statement is silent as to whether a defendant is entitled to sentencing credit where ICE detains him pending potential criminal prosecution.[12] *376 Although a number of district courts have relied on the BOP Program Statement to deny sentencing credit for time during which a defendant was held in ICE detention pending deportation proceedings, we do not read these cases as inconsistent with our holding in any respect. First, they engage in only cursory analysis, stating merely that the BOP Program Statement is entitled to deference and that deportation proceedings are classified as civil. Second, these cases all refer to persons being held in custody pending deportation proceedings,[13] Thus, these cases do not provide support for the Government’s argument that sentencing credit must be denied when ICE detains an alien pending potential criminal prosecution, as opposed to pending deportation.
The Government also argues that detention by ICE never constitutes “official detention” within the meaning of § 3585(b) because deportation is a civil proceeding. There is no dispute, however, that an alien being held for deportation, a civil proceeding, is not entitled to sentencing credit. The question here is whether an alien held by ICE for the purpose of securing his attendance at a criminal proceeding is entitled to such credit. Thus, the Government’s argument simply misses the point.
The Government’s final argument is that requiring BOP to grant credit for time spent in ICE detention would be an unworkable regime because it would be “extremely difficult if not impossible to administer.” Zavala v. Ives, No. CV 13-3603-JFW(E), 2013 WL 4763839, at *4 (C.D.Cal. Sept. 3, 2013). We reject this argument, for two reasons.
First, a number of district courts have already adopted the interpretation of § 3585(b) that we adopt today and granted credit for time spent in immigration detention pending potential prosecution, including pre-indictment periods as long as near *377 ly two months.[14] These courts engaged in a fact-based inquiry to determine when the defendant’s detention status changed from detention pending deportation to detention pending criminal prosecution. Courts are wholly competent to adjudicate when' that status change occurred, as it is a factual inquiry that can often be resolved by examining ICE’s administrative records and the ICE officers responsible for an alien’s case. Indeed, BOP has at least on occasion voluntarily undertaken this inquiry itself. See supra note 12.
Second, BOP already grants sentencing credit for time spent in state or foreign custody where that time was not credited to another sentence. See §' 3585(b)(2); Koray, 515 U.S. at 63 n. 5, 115 S.Ct. 2021; BOP Program Statement 5880.28 at 1-14A, 1-21. In order to facilitate the calculation of sentences in such circumstances, BOP has in place a policy for intergovernmental communications to investigate and verify claims of entitlement to sentencing credit. See BOP Program Statement 5880.28 at 1-26 (“Proper documentation will consist of written documentation ... from any law enforcement agency (including probation officers). This includes verified phone, fax, or teletype messages, PSI, Rap Sheet, Booking Sheets, SENTRY, USM Form 129, etc.”). If anything, it should be easier, not harder, to coordinate an information exchange between two federal government actors — BOP and ICE— than it is to coordinate between state and federal or foreign and federal actors.[15]
The fears that BOP and courts will be unable to administer a system that requires determining whether an alien’s detention constituted detention pending potential criminal prosecution, as opposed to detention pending deportation, are thus without merit. We are confident in BOP’s ability to comply with its statutory mandate with respect to detention by ICE— just as it does with respect to detention by state and foreign governments — and in the courts’ ability to adjudicate disputes over sentencing credit should they arise.
III.
For the forgoing reasons, we hold that an alien is entitled to credit toward his criminal sentence under § 3585(b) for the period during which ICE detained the alien pending potential criminal prosecution. We turn now to application of this principle to the facts of the instant case.
A. Post-Indictment Detention
ICE detained Zavala during the period of time after dismissal of the first indictment for improper venue and before the filing of identical criminal charges in the proper venue. This detention occurred from December 11, 2010 through December 21, 2010. Zavala is clearly entitled to sentencing credit for this post-indictment period of ICE detention because it constituted detention pending criminal prosecution.
Most important, this time period occurred after the Government instituted *378 criminal charges. Where ICE retains an alien in custody subsequent to an indictment or the filing of criminal charges and the alien is then convicted of those charges, we hold that the intervening period of detention is presumed to be for the purpose of criminal prosecution and the alien is entitled to sentencing credit.
The Government does not contend that during the. post-indictment period ICE held Zavala pending deportation. The record makes clear that all governmental actors involved always intended that the criminal charges against Zavala be reinstated in the proper venue. The language of the Government’s proposed order of dismissal indicated its intention to refile criminal charges in the proper venue, expressly identifying that venue, and the refiled charges were supported exclusively by an ICE officer’s affidavit. We thus hold that the district court erred when it denied Zavala sentencing credit for the post-indictment period during which ICE detained him pending criminal prosecution.
B. Pre-Indictment Detention
As for the pre-indictment period, Zavala was subject to a reinstated order of removal on his first day in ICE custody, September 20, 2010, and he did not contest this order, meaning ICE could have deported him at any time thereafter. 8 U.S.C. § 1231(a)(5) (stating that “the alien shall be removed under the prior order at any time after the reentry”). ICE nonetheless continued to detain Zavala until October 6, 2010, when he was indicted for illegal reentry.
As we stated earlier, the BOP Program Statement does not bar Zavala from receiving sentencing credit during any period in which he was being detained pending potential prosecution. The record before us, however, does not show whether he was held pending potential criminal prosecution, and if so, for what part of the pre-indictment period. On the one hand, execution of a removal order is not required to be instantaneous, see § 1231(a)(1), and it is therefore possible that Zavala’s continuing detention was related to the process of implementing the deportation order.[16] On the other hand, the process of indicting a criminal defendant is ordinarily not a one-day affair. Usually it requires some investigation and deliberation before a decision to indict (or to file a criminal complaint) is made by the criminal authorities, normally the U.S. Attorney’s Office. During that process, federal prosecutors and immigration officials often cooperate in determining whether criminal charges are warranted and particularly in ensuring the alien’s presence at the criminal proceedings. Zavala is entitled to credit for the latter type of detention — detention for the purpose of ensuring his presence at his prosecution— but not for the former type — detention for the purpose of executing the removal order.[17] Because the district court erred in *379 holding that as a matter of law Zavala could not receive any credit toward his sentence for time spent in ICE detention, it failed to Consider whether that detention was pending deportation or pending potential prosecution. We therefore remand for the district court to determine in the first instance whether and when, during the pre-indictment period, Zavala’s detention status changed from detention pending deportation to detention pending potential prosecution.
We hold that, on remand, the government has the burden of proving that the pre-indictment detention was for the purpose of deportation rather than potential prosecution. This burden is justified for two reasons. First, it furthers judicial efficiency in light of the “judicial estimate of the probabilities of the situation.” 2 McCormick on Evidence ■ § 337 (7th ed.2013). After all, we know how this story ends: Zavala was not deported, but prosecuted. This is so in all sentencing credit cases arising under § 3585(b). In such cases, it is always clear that at some point in time the government elected to pursue the possibility of prosecution, rather than to deport the alien in the normal course. Had it chosen otherwise, the question of credit toward a criminal sentence would not arise. In other words, the most likely outcome is that the alien is entitled to some sentencing credit beyond that credited from the date on which the indictment or formal charges were filed.
Second, evidence as to the reason for an alien’s detention “is peculiarly accessible to one of the parties,” Edmund M. Morgan, Instructing the Jury Upon Presumptions and Burden of Proof 47 Harv. L.Rev. 59, 79 (1933). The government unquestionably has superior access to the critical information — i.e. reports of investigation by ICE officers, records of the criminal investigation component of ICE, sworn statements by investigating officers, the time and contents of communications between ICE officers and prosecutorial agencies, and so forth — the information that is determinative of when an alien’s detention status changed from detention pending deportation to detention pending potential prosecution. The fact-finding required on remand is not some amorphous “inquiry into the elusive intent of individual [ICE] officers,” as the dissent contends. Dissent at 12. Rather, it is primarily a matter of . reviewing records that ICE already maintains in the ordinary course of its operations. For example, the government could meet its burden of proving that pre-indictment detention was for the purpose of deportation rather than potential prosecution by producing evidence that proceedings to determine deportability were actively being pursued, or, where a final removal order has already been obtained (as in this case), that it was in the process of making logistical arrangements for the detainee’s departure from the country, and that it was not merely awaiting action by the U.S. Attorney’s Office or helping build a criminal case.[18]
We accordingly remand for the district court to conduct an evidentiary hearing. The relevant question on remand is wheth *380 er the Government can establish that Zavala’s detention from September 20, 2010 to October 5, 2010 was not for the purpose of potential prosecution.
IV.
We hold that when immigration officials detain an alien pending potential prosecution, the alien is entitled under § 3585(b) to credit toward his criminal sentence. We also hold that an alien is entitled to credit for all time spent in ICE detention subsequent to his indictment or the filing of formal criminal charges against him. Finally, we hold that where a factual dispute exists, the district court must hold an evidentiary hearing as to whether an alien’s detention by ICE prior to the date of his indictment or the filing of criminal charges against him constituted detention pending prosecution.
REVERSED AND REMANDED.

. We grant Zavala’s unopposed motion to take judicial notice of the September 20, 2010 Form 1-871 and the Record of Sworn Statement in Affidavit Form dated September 20, 2010, both of which documents were in Zavala’s immigration file and were provided to him by the Government in these proceedings.

. Also on September 20, 2010, Zavala completed and signed an affidavit on a form provided by ICE admitting that he was a citizen of Mexico, that he had previously been deported, that he reentered the United States on foot from Mexico, and that he had not sought permission to reenter the United States.

. BOP, rather than the sentencing court, calculates the defendant’s entitlement to sentencing credit under § 3585(b) in the first instance. See United States v. Wilson, 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). A defendant may then challenge BOP’s calculation — in other words, the execution of the sentence — by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See United States v. Giddings, 740 F.2d 770, 772 (9th Cir.1984).

. 8U.S.C. §§ 1226(a)(1); 1231(a)(2).

. Early versions of the Sentencing Reform Act of 1984, which rewrote and recodified the sentencing credit statute, creating § 3585, included a definition of "official detention” that encompassed "detention by a public servant ... pending deportation” — a far more expansive definition than the one we adopt. See, e.g., Criminal Code Reform Act of 1981, S. 1630, 97th Cong. § 111 (1981). The entirety of the definitions section, however, was deleted prior to enactment.
In United States v. Wilson, the Supreme Court held that the deletion of a reference to the Attorney General during the recodification of the sentencing credit statute effected no change in the statute's meaning. See 503 U.S. at 336, 112 S.Ct. 1351 (concluding the reference "was simply lost in the shuffle”). The Court noted that Congress’s replacement of the term "custody” with "official detention” might have constituted a meaningful change, id. at 337, 112 S.Ct. 1351-, but it subsequently held that the change was a technical one that did not alter the meaning of the statute. See Reno v. Koray, 515 U.S. 50, 59-60, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995).

. The dissent's approach, under which a person held in ICE detention pending criminal *373 prosecution would receive credit only if criminal charges have already been filed perpetuates this arbitrary disparity. When police officers arrest a criminal suspect, sentencing credit begins at the time of arrest, rather than when formal charges are filed. See, e.g., BOP Program Statement 5880.28 at 1-21.

. The dissent asserts that we adopt different definitions of "official detention” with respect to ICE detention and community treatment centers. Not so. To recapitulate: Koray held that a person released to a community treatment center is not detained. We hold that where a person is detained by ICE, § 3585(b) may apply. Certainly where a person is released on bond by ICE, it does not.
Nor do we agree with the dissent’s contention that because the Immigration Nationality Act and the Sentencing Reform Act were created by different legislation, we should not presume that Congress intended for them to be construed harmoniously.

. The dissent asserts that we make too much of the statements in Koray pertaining to credit for state detention and that "official detention” in § 3585(b) is in all circumstances limited to detention under the control of BOP, *374 USMS, or the Attorney General of the United States because that is the detention referred to as "official detention” in § 3585(a) and other provisions of the Sentencing Reform Act- — -the enactment that included the Bail Reform Act. We conclude, however, that we must abide by the Supreme Court's statement that "situations [in which "the defendant was not subject to the control of the BOP”] obviously are not governed by reference” to the Bail Reform Act. Koray, 515 U.S. at 63 n. 5, 115 S.Ct. 2021. (second emphasis added). It is equally obvious that such situations are not governed by reference to other provisions of the Sentencing Reform Act pertaining to inmates in federal prisons.

. Even if Koray required a defendant to be under the control of BOP, USMS, or the Attorney General in all circumstances to be eligible for sentencing credit as the dissent contends, our colleague overlooks the dispositive fact that when Koray was decided in 1995 (and when BOP adopted its Program Statement), all immigration detainees — whether charged with a crime or not — were indeed within the control of the Attorney General. - The Immigration and Nationality Service (INS) was in the Department of Justice and the Department had jurisdiction over immigration matters until 2002, when the Attorney General’s authority over immigration, including over the INS, was transferred to the Secretary of (he newly formed Department of Homeland Security. See Establishment of Department; replacement of Immigration and Naturalization Service; transfer of functions, 3A Am.Jur.2d Aliens and Citizens § 35 (George Blum et al. eds., 2015). Surely the transfer of INS to a new, comprehensive agency designed to cover national security matters did not change the nature of its control over immigration detention. Nor does it matter that INS was reorganized to be part of a newly created federal department reporting to the Secretary of Homeland Security, who exercises the authority over immigration matters that the Attorney General formerly did.

. Under Tablada v. Thomas, the BOP Program Statement would be entitled to Skid-more, rather than Chevron, deference if it addressed the question presented. See 533 F.3d 800, 806 (9th Cir.2008) (applying Skidmore deference to the interpretation of the good-time credit statute contained in the same BOP Program Statement). Even if the BOP Program Statement precluded sentencing credit for any and all time spent in immigration detention,’ as the Government asserts, we would find this interpretation of the statute unpersuasive under Skidmore. When applying Skidmore deference, "[a]mong the factors we consider are the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used.” Id. (internal quotation marks and brackets omitted). The BOP Program Statement "does not purport to carry the force of law and was not adopted after notice and comment,” id., and the closest it comes to giving any explanation for its interpretation of the statute is the inclusion of three case citations. See BOP Program Statement 5880.28 at 1-15A. All three cases cited involved claims of constitutional error committed in the course of deportation proceedings and none of them involved sentencing credit. Rather, the cited cases simply denominate deportation proceedings as "civil” proceedings. See Ramirez-Osorio v. INS, 745 F.2d 937 (5th Cir.1984); Shoaee v. INS, 704 F.2d 1079 (9th Cir.1983); Cabral-Avila v. INS, 589 F.2d 957 (9th Cir.1978). As dis *375 cussed infra, that deportation proceedings are classified as civil has no bearing on whether a criminal defendant is entitled to credit toward his criminal sentence. Thus, even if the Government's reading of the Program Statement were correct, it would lack the logic, expertise, and thoroughness needed to trigger deference to an agency's interpretation of a statute.

. The dissent proclaims that the phrase “pending criminal charges” refers solely to criminal cases in which charges have already been filed, as opposed to cases awaiting the filing of charges. This argument is without merit. In addition to the two definitions mentioned by the dissent- — one of which is wholly consistent with our opinion — “pending” is also defined as "While awaiting; until” when used as a preposition. Black's Law Dictionary (10th ed.2014). See also Webster’s New World Dictionary 998 (3d Coll, ed.1988) (including the following definitions: "not decided, determined, or established”; “about to happen; impending”; '“throughout the course or process of”; and “while awaiting; until”). We decline to read into the Program Statement a distinction between cases in which charges have already been filed and those in which they are being explored, for the reasons previously discussed in Section II.A, supra.

. On at least four occasions reported in federal court decisions BOP has voluntarily granted sentencing credit for time the defendant spent in ICE detention where BOP determined that the detention was pending criminal prosecution and not pending deportation — including one case in which the detention preceded formal criminal charges. See Sanchez v. Kruger, No. 3:CV-13-2025, 2014 WL 6886240, at *2 (M.D.Pa. Dec. 4, 2014) (dismissing habeas petition as moot because BOP granted the defendant credit for the nineteen days prior to his indictment during which he was held in ICE detention pend-, ing criminal prosecution); De Leon v. Copenhauer, No. 1:12-CV-00976-BAM (HC), 2012 WL 5906551, at *2 (E.D.Cal. Nov. 26,.2012) (noting that BOP granted the defendant credit for the time he was held pending prosecution, including thirty-eight days in ICE detention); United States v. Taymes, CR No. 07-108-S, 2010 WL 93695, at *1-2 (D.R.I. Jan. 8, 2010) (noting that BOP granted the defendant credit for five days during, which he was held in ICE detention after criminal charges were filed but before the defendant was transferred to USMS custody); Reyes-Ortiz v. Schultz, CIV. 08-63 86(JEI), 2009 WL 4510131, at *1 (D.N.J. Dec. 1, 2009) (noting that BOP granted the defendant sentencing credit for the time after the defendant “was .ordered deported, but then continued to be held for prosecution,” including credit for one day in ICE detention prior to his transfer into USMS custody). We have no reason to think that BOP did not grant similar credits for ICE detention in other instances that did not find their way into litigated federal cases.

. See Solorzano-Cisneros v. Zych, No. 7:12— cv-00537, 2013 WL 1821614, at *3 (W.D.Va. April 13, 2013) ("The period ... when Solorzano-Cisneros was held in ICE custody pending civil deportation review, does not constitute 'official detention’ under pending criminal charges”); Castro-Frias v. Laughlin, No. 5:11 cv 174-DCB-RHW, 2012 WL 4339102, at *2 (S.D.Miss. July 13, 2012), adopting report & recommendation, 2012 WL 4339216 (S.D.Miss. Sept. 20, 2012) (finding claim moot but noting that "time spent in ICE custody awaiting deportation determination is not official detention ”); Plummer v. Longley, No. CIV.A. 10-171 ERIE, 2011 WL 1204008, at *3 (W.D.Pa. Mar. 28, 2011) (declining to disturb BOP’s determination that " 'official detention’ under § 3585(b) does not include time spent in ICE 'civil custody’ pending a final determination of deportability”); U.S. v. Acosta-Leal, No. 10-30036-DRH, 2010 WL 4608477, at *2 (S.D.Ill. Nov. 5, 2010) ("[A] person detained by INS while awaiting a deportation determination is not 'in official detention’ ”); Similien v. United States, No. 4:04-CV-162, 2007 WL 496637, at *1 (N.D.Ohio Feb. 8, 2007) ("During this time, Petitioner was detained by [ICE] while awaiting exclusion proceedings.”); Ghadiri v. Sniezek, No. 4:06CV1765, 2006 WL 3023034, at *3 (N.D.Ohio Oct. 23, 2006) ("[D]uring the period of time Mr. Ghadiri was confined by the I.N.S.... he was in I.N.S. custody solely for the purpose of deportation proceedings.”); Alba-Tovar v. U.S., No. 05-1899-JO, 2006 WL 2792677, at *2 (D.Or. Sept. 22, 2006) ("Petitioner’s custody ... was due to pending administrative deportation proceedings and does not constitute ‘official detention’ ”); Fletcher v. Pugh, No. CV 303-082, 2004 U.S. Dist. LEXIS 29450, at *5-6 (S.D.Ga. Apr. 16, 2004) ("[P]rior to the time of his indictment, Petitioner was only being held for disposition of civil proceedings that were not related to his eventual sentencing on the criminal charge of illegal re-entry.”); Decraene v. Winn, No. 03-40212-GAO, 2004 WL 594976, at *2 (D.Mass. Mar. 23, 2004) ("[T]hat period of time during which petitioner was confined by the Immigration and Naturalization Service was not the result of the offense for which he was convicted.... To the contrary, he was in INS custody solely for the purpose of deportation proceedings.” (emphasis omitted)).

. See Paz-Salvador v. Holt, No. 3:10-CV-2668, 2011 WL 3876268, at *5 (M.D.Pa. Aug. 31, 2011) (31 days); Reyes-Ortiz, 2009 WL 4510131, at *1, *4 & n. 2 (34 days); Galan-Paredes, 2007 WL 216699, at *1 (49 days); Guante v. Pugh, No. CV 305-92, 2005 WL 3867597, at *1 (S.D.Ga. Dec. 2, 2005) (47 days).

. In fact, it may be markedly easier to determine eligibility for sentencing credit for ICE detention time than for state detention time, as the former situation does not present the double-counting problem present in the latter situation. See § 3585(b) (providing that a defendant may not receive credit against a federal sentence for detention time that has "been credited against another sentence”).

. We note that when Zavala was previously removed in 2006, ICE deported him just one day after it obtained the order of removal.

. To be clear, we disagree with the statement in Abpikar v. Lompoc Federal Bureau of Prisons relied upon by the magistrate judge in this case. The magistrate judge held, quoting Abpikar, that'the filing of "a charge [by a U.S. Attorney] or [a] determination of probable cause” by a grand jury is required before detention can constitute "official detention” within the meaning of § 3585(b). Abpikar, 2012 WL 3777156, at *3. First, in cases concerning detention by law enforcement officials, sentencing credit is awarded from the time of arrest, not from the time that charges are formally filed or an indictment returned. See BOP Program Statement 5880.28 at 1-21. Second, as explained supra, the approach we adopt has already been successfully applied to detention by immigration officials, and BOP already regularly calculates sentencing credit *379 in the analogous state detention context. Moreover, the Abpikar approach (also' propounded by the dissent) has no basis in the text of the statute and would fail to address arbitrary sentencing disparities.

. To be clear: the foregoing are merely examples of how the government could meet its burden of proving that detention was not for the purpose of securing the detainee’s presence at a criminal prosecution. We, of course, do not imply in any way that "official detention” can occur only subsequent to a final removal order. Quite the contrary. To the extent that the dissent suggests otherwise, it simply misunderstands our opinion.